[Crim. No. 13093. In Bank. Aug. 5, 1969.]

THE PEOPLE, Plaintiff and Respondent, v. LAWRENCE WAYNE REDMOND, Defendant and Appellant.

747

748

David C. Marcus for Defendant and Appellant.

Thomas C. Lynch, Attorney General, William E. James, Assistant Attorney General, and James H. Kline, Deputy Attorney General, for Plaintiff and Respondent.

PETERS, J.—Defendant appeals from a judgment of conviction of burglary in the first degree entered after trial without a jury.[1] (Pen. Code, §§ 459, 460.)

Mrs. Bertha Worcester, aged 79, resided with her husband, aged 78, at 4908 West 134th Place in Hawthorne. Her testimony may be summarized as follows: On April 14, 1967, pursuant to a request by her or her husband to the T.V. Mart, a television salesman came to her residence to discuss the possible purchase of a television set. They talked in the house for about three quarters of an hour. He was a large man, 6 feet, 180 pounds, and he was wearing a black and white tweed sports coat. Mrs. Worcester was not asked and did not state in which room or rooms the conversation occurred.

The following day about 9 p.m., she and her husband were seated in the living room watching television, and she saw a man standing in the living room. The man's entire face was covered with a white mask. When asked to describe the man, she said: "Well, he was about the same build as the man that

---

[1]Defendant admitted two prior narcotic convictions and a prior forgery conviction.

had been there discussing televisions.'' He had a screwdriver about 5 or 6 inches long in his hand. He stated that he knew that they had $600 and that he wanted it. She denied having the money, and he continued to demand it. After about 15 or 20 minutes she went into her bedroom, obtained her purse, and upon returning to the living room she gave the man the money in the purse, about $10. Her husband reached for his cane, and the man ''dug this screw driver into my husband's left hand, made two places where it bled profusely.'' The man then took the cane, hit her across the back of the head with it and then pushed her down on the floor. Subsequently, Mrs. Worcester went to a hospital for treatment.

She also said that the defendant resembled the robber and that the robber was wearing the same coat as the television salesman.

Upon cross-examination Mrs. Worcester stated that on April 29 she had visited a lineup at a police station. She was asked whether she had not told the officers there that the defendant did not seem as big as the person who was in her house on April 15 and that she could not identify him. She stated: ''Your Honor, that's a hard question for me to answer. It needs a little explanation of answer.

''The Court: Answer it with an explanation.

''The Witness: When we was taken down to the station for identification, I recognized across the eyes, and I recognized the voice, but the hair had been cut short to the head, and he had on blue denim work clothes instead of street clothes, which made a little difference, but I told Sergeant Hoffman that the voice and the eyes, I was quite sure.

''Q. By Mr. Arthur: Well, when you relate to the eyes, you didn't see the color of the person's eyes that was in your house at all on the 15th of April, did you?

''A. No, I'm not talking about the color of the eyes. I'm talking about the expression.

''Q. Well, you have indicated to the Judge that whoever was in your house on Friday, April 15, had a white type mask on covering his entire face?

''A. That's right, yes, sir.

''Q. Could you see through that mask?

''A. No, sir.

''Q. Well, then, what are you relating the eyes to, the expression, if you couldn't see through the mask in relation to the identification lineup you went to?

"A. Well, he had the mask on when he broke in. He didn't have it on when I went down for identification.

"Q. I understand that, but I will ask again. You could not see his eyes or any squinting going on about the eyes at the time that you were burglarized, isn't that correct, because of the mask?

"A. Well, there is an expression across the eyes that I recognized, and I recognized the voice very definitely.

"Q. All right. Now, didn't you tell one of the investigating sheriffs that this person, that is, the defendant, that you saw in the lineup, was not as big, not as heavy?

"A. Well, we said he didn't look as heavy as he did in his street clothes.

"Q. Isn't it also a fact that you told whoever the officers were there at that time that you could not even identify Mr. Redmond as being in your house the previous day, Friday, the 14th?

"A. I said the expression across his eyes and his voice was identical, but the street clothes made him look larger than the clothes he had on that night.

"Q. All right, but isn't it a fact now—please listen to my question—that you told an officer or officers that you could not even identify Mr. Redmond as being the TV salesman that was in your house the Friday before the burglary?

"A. I didn't say definitely. I said I wasn't sure.

"Q. You said you were not sure whether he was in your house or not on Friday the 14th, is that correct?

"A. I said I wasn't quite sure it was him outside the eyes and the voice was the same.

"Q. Describe exactly, if you will, please, what you told me and what you told the officers concerning the eyes.

"A. Well, I said there was an expression across the eyes that I noticed resembled Mr. Redmond's.

"Q. All right. Now, what expressions, if you can break that down a little bit, please.

"A. Well, I'm afraid that's hard to do. I'm afraid I can't.

"Q. In other words, your identification is based upon a voice similarity and some expression in the eyes that you state that you caught when the man that burglarized your house had a white mask on, is that correct?

"A. Yes, sir. . . .

"Q. And I ask you to search your memory again. Is it not a fact that at the lineup, at the showup, you stated to an officer or officers that you were unable to identify Mr. Redmond,

saying that you thought the suspect was bigger, but the voice sounded somewhat the same?

"A. Yes.

"Q. Is that about what you said?

"A. Yes, sir."

Mrs. Worcester said that the first time she gave a description to the police of her assailant was at the time of the lineup.

An officer also testified regarding the April 29 lineup. He stated that after receiving information from the Worcesters pertaining to the T.V. Mart, he learned that defendant was one of the firm's two salesmen; that on April 29 he asked that defendant be sent to a police station; that when defendant arrived and was asked about his house calls in the area generally, he said he could not recollect specific ones and that he made about 200 calls per week; that defendant was not asked whether he had visited the Worcesters' address; and that defendant who was not under arrest said he "would like to do anything he could to clear up this matter" and agreed to participate in a lineup and to give his fingerprints.

The officer testified that the lineup occurred in one room with the Worcesters in another on the other side of a one-way mirror. According to him, Mrs. Worcester said that the "defendant's features around the eyes were the same as the suspect's" that the features in the area of the nose and cheekbones were the same as defendant's, that "the voice sounded the same as the suspect's voice," and that the appellant's hair was brown and longer. The officer also testified that the Worcesters could not identify defendant either as the television salesman who had been at their home on April 14 or as the assailant on April 15.

The officer further testified that at the time of the lineup Mrs. Worcester said that the color of the tweed sport coat was brown and did not say that it was black and white. Defendant was released after the lineup.

Mr. Worcester was ill at the time of trial and did not testify. Another officer who apparently investigated the robbery on the date of the crime or the next day said that there was "some confusion" as to whether Mrs. Worcester was struck by a cane or was shoved, that the police report states she was shoved and hit her head on a door, that although Mr. Worcester had bruises on his hands, he denied that the assailant touched him or hit him, but that on a subsequent occasion Mr. Worcester said he did not know if he had been struck by

an object and could not recall, he was too concerned about his wife.

There was also evidence that between April 15 and April 16 a clasp on the bottom of a screen to the window of the Worcester bedroom was broken and the screen bent up. Defendant's fingerprint was found on the inside window sill of the bedroom.

Defendant testified that he began working for the T.V. company about January of the year, that on April 14 he visited the Worcester home in response to a call concerning a T.V. set, that his conversation was mostly with Mr. Worcester and consumed about 20 minutes, that the price he quoted on television sets ranged from $318 to $350, that during the conversation they had first talked about consoles and table models, that he thought maybe he could sell them a portable and suggested that they keep their set, that they could install a two-set coupler from which an antenna would run to the portable set, that he went into the Worcester bedroom to show Mr. Worcester how a portable could be attached to the antenna by use of a coupler on the inside of the window, and that he recalled touching the window sill when he leaned back and asked Mr. Worcester, "What can we do to make a deal?" The deal was not made, and they returned to the living room.

Defendant claimed that he was working at 9 p.m. on Saturday evening, April 15. He said he owned several sports coats, most of which were in solid colors and that he had only one tweed sport coat, which was powder blue.

Defendant's parents testified that their son lived with them, that he went to college in the morning and then worked from 1 p.m. to 9 p.m. at the T.V. Mart, that they were familiar with his wearing apparel, and that he did not have a black and white or brown tweed sport coat.

The trial judge found defendant innocent on count I (robbery of Mr. Worcester) and guilty of the three remaining counts, robbery in the second degree (Mrs. Worcester), burglary in the first degree, and assault by means of force likely to produce great bodily injury. The judge dismissed all but the burglary count.

After the finding of guilt, defendant moved that counsel, Bradford Arthur, be relieved. Counsel joined in the motion stating that defendant said he would like to represent himself, that he (counsel) believed that defendant was an intelligent person in his knowledge of the law, and that he knows exactly what he is doing. In answer to a question by the court,

defendant said he wanted to relieve counsel and further stated that he wanted to represent himself. The court then stated: ''And what do the People say? I don't know what this may mean. Mr. Arthur, then, is relieved, no one objecting thereto.'' The court did not question defendant as to his ability to represent himself. Defense counsel stated that he would get defendant a copy of the preliminary transcript and that he would return certain funds to defendant's parents, who had employed him. The proceedings were continued to August 28.

On that date defendant appeared and made a number of motions. His motion to compel defense counsel to repay $358.40 which he had received for expenses which were not incurred was granted. Defendant moved for an order to compel his counsel to turn over transcripts and legal documents, and the court stated that he would order counsel to turn them over if he has them. The court also stated that if counsel had lost them he could not turn them over. A motion requesting copies of the police report was denied. Defendant also moved to disqualify the judge under section 170.6 of the Code of Civil Procedure, and the motion was denied.

The court then proceeded to ask defendant the basis of the motion for new trial. Defendant stated that he would like to subpoena at least three people on the motion for new trial and wished a continuance. The trial judge stated that defendant could not subpoena witnesses but could file affidavits. The defendant then stated: ''I feel there has been a miscarriage of justice in the case, your Honor; and I would somehow like to get these facts before the Court. . . .

''THE COURT: Well, 1181 in the Penal Code says, on grounds for a motion for a new trial:

Grounds: When a verdict has been rendered or a finding made against the defendant, the Court may, upon his application, grant a new trial, in the following cases only:

No. 1. When the trial has been had in his absence except in cases where the trial may lawfully proceed in his absence.

You are not appealing on that ground. You were present.

No. 2. When the jury has received any evidence out of court—

This was not a jury trial so you are not concerned with that.

No. 3. When the jury has separated without leave of the Court after retiring to deliberate upon their verdict—and so forth. You are not concerned with that.

No. 4. When the verdict has been decided by lot—That is where they threw up dice or something.

No. 5. When the Court has misdirected the jury—You are not concerned with that—or has erred in the decision of any question of law arising during the course of the trial—I don't know if you are concerned with that. I haven't seen your motion. I don't expect you cited any error of law.—and when the District Attorney or other counsel prosecuting the case has been guilty of prejudicial misconduct during the trial thereof before a jury. You are not concerned with that. There was no jury.

No. 6. When the verdict or finding is contrary to law or evidence, but if the evidence shows the defendant to be not guilty of the degree of the crime of which he was convicted, but guilty of a lesser degree thereof, or of a lesser crime included therein, the Court may modify the verdict—You are not concerned with the degree. You feel you are innocent entirely, and that the verdict is contrary to the evidence in general.

No. 7. When the verdict or finding is contrary to law or evidence, but in any case wherein authority is vested by statute in the trial court or jury to recommend or determine as a part of its verdict or finding, the punishment to be imposed— Some cases allow the jury to recommend punishment. It wasn't in this case. Anyway, it was a Court trial. You are not involved with No. 7.

No. 8. When new evidence is discovered material to the defendant, and which he could not, with reasonable diligence, have discovered and produced at the trial. When a motion for a new trial is made upon the ground of newly discoverd evidence, the defendant must produce at the hearing, in support thereof, the affidavits of the witnesses by whom such evidence is expected to be given, and if time is required by the defendant to procure such affidavits, the Court may postpone the hearing of the motion for such length of time as, under all circumstances of the case, may seem reasonable.''

Defendant then stated that he would like to subpoena Mr. Worcester, who he felt would verify his account of the interview. The court after some further discussion said it would continue the motion for new trial until September 6.

On the latter date the trial court pointed out that the affidavits filed in support of the motion for new trial did not involve anything which could not have been discovered earlier. This was undoubtedly correct. The court also consid-

ered the substance of the affidavits filed and certain other evidence which defendant indicated he was prepared to produce by the testimony of a person present in court. All of defendant's arguments related to the effect of newly dicovered evidence on the evidence received at trial. He did not urge the trial court to reconsider the evidence and determine again whether the evidence showed guilt beyond a reasonable doubt. The court denied the motion for new trial.

■ This court must view the evidence ·in a light most favorable to respondent and presume in support of the judgment the existence of every fact the trier could reasonably deduce from the evidence. (*People* v. *Sweeney,* 55 Cal.2d 27, 33 [9 Cal.Rptr. 793, 357 P.2d 1049].) ■ If the circumstances reasonably justify the trial court's findings, reversal is not warranted merely because the circumstances might also be reasonably reconciled with a contrary finding. (*People* v. *Robillard,* 55 Cal.2d 88, 93 [10 Cal.Rptr. 167, 358 P.2d 295, 83 A.L.R.2d 1086] ; *People* v. *Love,* 53 Cal.2d 843, 850-851 [3 Cal.Rptr. 665, 350 P.2d 705].) ■ The test on appeal is whether there is substantial evidence to support the conclusion of the trier of fact; it is not whether guilt is established beyond a reasonable doubt. (*People* v. *Hillery,* 62 Cal.2d 692, 702-703 [44 Cal.Rptr. 30, 401 P.2d 382].)

■ Before the judgment of the trial court can be set aside for insufficiency of the evidence to support the verdict of the jury, it must clearly appear that upon no hypothesis whatever is there sufficient substantial evidence to support it. (*People* v. *Daugherty,* 40 Cal.2d 876, 885 [256 P.2d 911].) ■ Evidence which merely raises a strong suspicion of the defendant's guilt is not sufficient to support a conviction. Suspicion is not evidence ; it merely raises a possibility, and this is not a sufficient basis for an inference of fact. (*People* v. *Briggs,* 255 Cal.App.2d 497, 500-501 [63 Cal.Rptr. 111] ; *People* v. *Tatge,* 219 Cal.App.2d 430, 435-436 [33 Cal.Rptr. 323] ; *People* v. *Rascon,* 128 Cal.App.2d 118, 122 [274 P.2d 899].)

■ In *People* v. *Bassett,* 69 Cal.2d 122, 139 [70 Cal. Rptr. 193, 443 P.2d 777], we recently pointed out that, in considering the sufficiency of evidence purporting to connect the defendant with the crime, ''the appellate court is required to determine whether a reasonable trier of fact could have found that the prosecution sustained its burden of proving the defendant guilty beyond a reasonable doubt (*People* v. *Hall* (1964) *supra,* 62 Cal.2d 104, 109-110 [41 Cal.Rptr. 284, 396 P.2d 700], citing *People* v. *Huizenga* (1950) 34 Cal.2d 669,

756

676 [213 P.2d 710].) The prosecution's burden is a heavy one: 'To justify a criminal conviction, the trier of fact must be reasonably persuaded to a near certainty. The trier must therefore have reasonably rejected all that undermines confidence.' (*People* v. *Hall, supra*, at p. 112.) Accordingly, in determining whether the record is sufficient in this respect the appellate court can give credit only to 'substantial' evidence, i.e., evidence that reasonably inspires confidence and is 'of solid value.' '' As *Bassett* points out, this rule has also been applied in numerous cases involving the sufficiency of evidence as to matters other than identification. (69 Cal.2d at p. 189.)

 At trial Mrs. Worcester did not identify defendant as her assailant or as the salesman who called upon her the previous evening. On direct examination she testified only that defendant "resembles" her assailant. She was not asked and did not state whether she recognized defendant either as her assailant or as the television salesman. On cross-examination she was not asked to identify defendant as the assailant but only as to whether she had identified him at the lineup. She said she "wasn't sure" and "wasn't quite sure" whether the man in the lineup was the television salesman. Although at the outset she said "there is an expression across the eyes that I recognized, and I recognized the voice very definitely," she subsequently stated that her identification was based upon a voice similarity and some expression in the eyes, and she finally testified that she told the officers that she was unable to identify defendant. The officer's testimony agreed, and in the circumstances there is no basis for a conclusion that she identified defendant as her assailant or as the television salesman either at the trial or at the lineup.

The fingerprint evidence cannot be considered substantially incriminating in the circumstances of the present case. The evidence is clear that defendant was in the house lawfully for a substantial period of time on the evening preceding the crime. The prosecution evidence places him there for three quarters of an hour. That evidence does not show where the conversations took place. Entirely consistent with the prosecution case the entire conversation could have occurred in the bedroom, and, if so, the presence of the fingerprint was not substantially incriminating. Defendant's testimony is that the conversation occurred both in the living room and the bedroom. In the circumstances here, we cannot conclude that the trier of fact would be warranted in finding the fingerprint an

incriminating matter on the theory that defendant who visited the house on April 14 did not visit the bedroom then. Nor can the placement of the fingerprint on the sill be viewed as a substantially incriminating factor. There is nothing in the record to show that the fingerprint was in a place where a visitor to the house would not have left it.

The prosecution in the instant case relied on the theory that the assailant and the television salesman were the same person. Since defendant concededly was the television salesman, substantial evidence that the salesman was the assailant would furnish a valid basis for a finding of guilt. However, there is no such substantial evidence. Mrs. Worcester did not testify that on April 15 she recognized the assailant as the person. who was present the prior evening or that on some subsequent date she thought that the assailant and the salesman might be the same person.[2] Nor does Mrs. Worcester's testimony as to the tweed jacket provide substantial evidence to uphold the conviction. There is no evidence that defendant owned or ever had in. his possession such a jacket, and Mrs. Worcester's testimony in this regard was directly and clearly impeached by the testimony of the police officer as to her statements at the lineup. There is no evidence that the assailant was aware of some facts that had been communicated to the salesman, and defendant's conduct on April 29 when he went to the police station did not reflect consciousness of guilt but to the contrary he went there alone and fully cooperated with the police officers. In the circumstances, we are compelled to conclude that there is no substantial evidence of guilt, ''evidence that reasonably inspires confidence and is 'of solid value,' '' and that it cannot properly be concluded that ''the prosecution sustained its burden of proving the defendant guilty beyond a reasonable doubt.'' (*People* v. *Bassett, supra,* 69 Cal.2d 122, 139; *People* v. *Hall, supra,* 62 Cal.2d 104, 109-110.)

It should also be pointed out that, even if the evidence were sufficient to sustain the judgment on appeal, we would be

[2]There is no explanation in the record as to the reason for the two-week delay between the burglary and the time when the police officer went to the T.V. Mart in an attempt to ascertain the identity of the salesman who had gone to the Worcester house. We cannot but speculate as to whether the delay was due to the press of other police business, a breakdown in communication between the Worcesters and the authorities, or some other reason, including the possibility that Mrs. Worcester did not believe that the burglar and the salesman were the same and that the police officer's call at the T.V. Mart was merely part of an exhaustive police investigation of persons who had called at the Worcester house in the days immediately preceding the burglary.

758

compelled to vacate the judgment because the trial judge gave defendant misleading advice during the proceedings on the motion for new trial. ■ A defendant in a criminal case has the constitutional right to waive counsel and represent himself if he knowingly and intelligently elects to do so. (*People* v. *Maddox,* 67 Cal.2d 647, 651 [63 Cal.Rptr. 371, 433 P.2d 163].) ■ A defendant who chooses to represent himself assumes the responsibilities inherent in the role which he has undertaken. (*People* v. *Robinson,* 62 Cal.2d 889, 894 [44 Cal.Rptr. 762, 402 P.2d 834]; *People* v. *Mattson,* 51 Cal.2d 777, 793-794 [336 P.2d 937].) He is not entitled to special privileges not given an attorney, and the judge ordinarily is not required to assist or advise him on matters of law, evidence or trial practice. (*People* v. *Robinson, supra,* 62 Cal.2d 889, 894 [objection to unlawfully obtained evidence]; *People* v. *Ashley,* 59 Cal.2d 339, 364 [29 Cal.Rptr. 16, 379 P.2d 496] [failure to call a witness]; *People* v. *Chessman,* 38 Cal.2d 166, 177 [238 P.2d 1001] [failure to object to prosecutor's misconduct]; *People* v. *Northcott,* 209 Cal. 639, 653 [289 P. 634, 70 A.L.R. 806] [failure to offer instruction].)[3] It is equally true that a defendant who represents himself is not entitled to less consideration than a defendant represented by an attorney. (*People* v. *Maddox, supra,* 67 Cal.2d 647, 653.)

■ Although a trial judge may not be required to aid a defendant who represents himself, it is a common practice in both civil and criminal cases for trial judges, by advice and suggestion, to assist persons who represent themselves. (Witkin, Cal. Criminal Procedure (1963) p. 383.) The primary goal of the effective administration of justice in this country is to assure that legal controversies are determined on the merits, and this goal is not furthered if a determination is based not on the merits but on the inabilities of a litigant untrained in the law who has chosen perhaps unwisely to represent himself and who is not fully conversant with legal procedures. It is in the highest tradition of American jurisprudence for the trial judge to assist a person who represents himself as to the presentation of evidence, the rules of substantive law, and legal procedure, and judges who undertake to assist, in order to assure that there is no miscarriage of

---

[3]There are exceptions to this rule. For example, in *People* v. *Kramer,* 227 Cal.App.2d 199, 202 [38 Cal.Rptr. 487], relying on cases from other jurisdictions, the court held that before a defendant not represented by counsel takes the stand, the trial judge must inform him of his privilege not to testify. (See also Pen. Code, §§ 859a, 860, 1018.)

justice due to litigants' shortcomings in representing themselves, are to be highly commended.

It is apparent that, as here, in a few cases a trial judge, acting with the highest motives in seeking to assist a defendant representing himself, will give erroneous or misleading advice because he is not thoroughly familiar with the case or because in the press of other judicial business he may have forgotten all of the details of the case. The danger that such error might occur in isolated cases does not outweigh the benefits to the administration of justice which will flow from trial judges who undertake to assist defendants representing themselves. And the danger of error should not deter a trial judge from undertaking to assist those defendants to make sure that their innocence or guilt will be based on the merits and not their inability to understand legal procedure. ■■■ Nevertheless, when a trial judge gives misleading advice to a defendant not represented by counsel, we must determine whether such advice may have caused a miscarriage of justice.

■■■ The comments of the judge as he went through the various grounds for a new trial under section 1181 of the Penal Code indicate that the only ground defendant could urge for a new trial was the ground for newly discovered evidence. As the judge went through the various grounds, he pointed out that defendant for various reasons was not concerned with each one. When he reached subdivision 6, he stated after reading it: ''You are not concerned with the degree. You feel you are innocent entirely, and that the verdict is contrary to the evidence in general.'' The quoted statement did not expressly foreclose sufficiency of the evidence as a ground for a new trial, but the tenor of the statement following as it did upon the judge's rejection of each of the prior subdivisions could only be understood as meaning that defendant was not concerned with subdivision 6. As we have seen, defendant's argument on the motion for new trial when subsequently made did not go to sufficiency of evidence but to newly discovered evidence, and none of the evidence was such, as the trial court pointed out, that he could not have produced it at the trial with reasonable diligence.

■■■ Under subdivision 6 of section 1181 of the Penal Code the trial judge on motion for new trial must consider the probative force of the evidence. This duty must be contrasted with that of an appellate court which must resolve all conflicts in favor of the judgment; the trial court must give

the defendant the benefit of its independent conclusion as to the sufficiency of the credible evidence. (*People* v. *Robarge,* 41 Cal.2d 628, 634 [262 P.2d 14]; see Witkin, Cal. Criminal Procedure, *supra,* pp. 574-575.)

 It is obvious that defendant should have made his motion on the ground of sufficiency of evidence. Had defendant carefully pointed out the uncertainties in the identification, the explanation of the fingerprint, and that the testimony as to the coat was impeached by the testimony of the police officer, the trial judge might have decided that the evidence did not show guilt beyond a reasonable doubt and that the finding of guilt, even if sustainable as a matter of law, should have been set aside.

The judge's explanation of subdivision 6 foreclosed defendant from arguing insufficiency, misled defendant as to the law, and in the light of the evidence, caused a miscarriage of justice.

The judgment is reversed.

Traynor, C. J., Tobriner, J., Burke, J., and Sullivan, J., concurred.

MOSK, J.—I concur.

I cannot agree that the trial judge, in reciting the grounds for a motion for new trial (Pen. Code, § 1181), misinformed or misled the defendant. Coming to subdivision 6, the court said, inter alia, ''You are not concerned with the degree. You feel you are innocent entirely, and *that the verdict is contrary to the evidence in general.*'' (Italics added.) That was—and still is—precisely the contention of the defendant, and the court's comment could not reasonably be interpreted to mean, as the majority assert, ''that defendant was not concerned with subdivision 6.''

Nevertheless, I conclude, as do the majority, that the judgment must be reversed. However inept defendant may have been in expressing views on the law and facts in urging his motion for new trial, the evidence was indeed insufficient to support a judgment of guilt. I would also hold that the court made inadequate inquiry to ascertain the competence of defendant to represent himself. (*People* v. *Carter* (1967) 66 Cal.2d 666, 672 [58 Cal.Rptr. 614, 427 P.2d 214]; *In re Johnson* (1965) 62 Cal.2d 325, 335 [42 Cal.Rptr. 228, 398 P.2d 420]; *In re James* (1952) 38 Cal.2d 302, 313 [240 P.2d 596];

*People* v. *Chesser* (1947) 29 Cal.2d 815, 822 [178 P.2d 761, 170 A.L.R. 276].)

McCOMB, J.—I dissent. I would affirm the judgment for the reasons expressed by Justice Lillie in the opinion prepared by her for the Court of Appeal, Second Appellate District, Division One (*People* v. *Redmond*, 2 Crim. 14891, filed December 3, 1968, certified for nonpublication).