[Crim. No. 17060. Second Dist., Div. One. Aug. 11, 1970.]

THE PEOPLE, Plaintiff and Respondent, v.
ROBERT MAURICE GORDON, Defendant and Appellant.

## COUNSEL

Peter L. Knecht for Defendant and Appellant.

Thomas C. Lynch, Attorney General, William E. James, Assistant Attorney General, and Mary Anne Sykulski, Deputy Attorney General, for Plaintiff and Respondent.

## OPINION

**LILLIE, J.**—Defendant was charged with possession of marijuana for sale (§ 11530.5, Health & Saf. Code). His motion under section 1538.5, Penal Code, was submitted on the transcript of the testimony taken at the preliminary hearing; additional evidence was offered by both parties. The motion was denied. Thereafter the cause was submitted on the transcript of the preliminary hearing and defendant was found guilty as charged. He appeals from the judgment (order granting probation).

Around 2:45 p.m. on February 2, 1968, Lyle Wenk, an American Airlines supervisor, working in the air freight department at the air terminal, saw defendant unload a leather trunk (Exh. 8) and an unsealed 30 x 18 cardboard carton containing a metal footlocker taped across the top (Exh. 7) from the back seat of a Volkswagen. Defendant then tendered them to American Airlines for shipment and filled out an airweigh bill; the airweigh bill indicated that the trunk and the footlocker were to be shipped to Kennedy Airport in New York and held there, the name of the shipper and of the consignee in New York (R. M. Gordon) were the same, they contained sculptures and there was no declared value and no insurance coverage on the shipment. Suspicious, Wenk took the trunk and cardboard box. He smelled the seams of the trunk but all he could detect was the smell of leather; he smelled the cardboard box and smelled something "unusual"—"[he] thought [he] smelled marijuana." From a prior experience[1] he was of the opinion that this particular shipment was

---

[1]Wenk had never smelled marijuana before but six days prior to this incident two officers from the narcotics division were at the terminal on another case and he had some "schooling" from them which covered narcotics and marijuana. The shipment

contraband of some sort. He took the license number of the Volkswagen and called the police.

Officer Feinberg was experienced in detecting the odor of marijuana. When he arrived Wenk gave him a description[2] of the man who tendered the shipment and the automobile and showed him the trunk and cardboard box. On the trunk he could detect no odor other than of leather but when he smelled at the seam portion of the cardboard box he detected an odor of marijuana. From the cardboard box he removed a footlocker, forced it open and found 44 kilos of marijuana (in excess of 80 pounds); each was individually wrapped in brown wrapping paper the shape of a brick.[3] Sergeant Feinberg then forced open the leather trunk and found an additional 32 kilos of marijuana wrapped in the same manner. Meanwhile he learned that the Volkswagen was registered to a leasing company whose files disclosed it had been leased to R. M. Gordon, 2215 Benecia, the same name and address found on the shipper's invoice. He gave Sergeant Conner a description of the car and its license number and a description of defendant; Conner staked out 2215 Benecia and in a few minutes saw defendant drive up and park the Volkswagen in front of the residence, and arrested him. Then Officer Feinberg searched defendant and removed from his person an American Airlines ticket in the name of T. Morton, dated February 2, 1968, two receipts from D. Jack Frost, Army-Navy surplus, for one trunk and one footlocker, invoice from American Airlines Freight System in the name of R. M. Gordon and keys, one of which unlocked the footlocker.

Defendant offered no defense and did not testify.

At the 1538.5 hearing Officer Feinberg reiterated some of the testimony given at the preliminary hearing and further testified that probable cause for entering the footlocker and trunk was the smell from the cardboard box containing the footlocker.

■ On the issue of the sufficiency of the evidence appellant claims the People failed to prove he had exclusive possession of the trunk and footlocker and that he knew they contained narcotics. The test on appeal is

---

in that case consisted of 800 pounds of peyote and the odor of peyote was described to him as "just about like marijuana." He knew the odor of peyote and when he smelled the cardboard carton it smelled "faintly like peyote."

[2]Wenk described the suspect as being "five-foot eleven and approximately 210 pounds" with a beard; he also gave police the license number of a red Volkswagen, "RSZ 111."

[3]Officer Conner, a narcotic expert, testified that in his opinion the marijuana was packaged in this manner for the purpose of sale; the going price for a kilo of marijuana in Los Angeles is $80 or $90.

whether there is substantial evidence to support the conclusion of the trier of fact. (*People* v. *Hillery,* 62 Cal.2d 692, 702-703 [44 Cal.Rptr. 30, 401 P.2d 382]; *People* v. *Redmond,* 71 Cal.2d 745, 755 [79 Cal.Rptr. 529, 457 P.2d 321].) ■ Viewing the evidence in a light most favorable to respondent and presuming in support of the judgment the existence of every fact the trier could possibly deduce from the evidence (*People* v. *Sweeney,* 55 Cal.2d 27, 33 [9 Cal.Rptr. 793, 357 P.2d 1049]), we conclude that there is ample substantial evidence to support the judgment. (*People* v. *Redmond,* 71 Cal.2d 745, 755 [79 Cal.Rptr. 529, 457 P.2d 321].) ■ Proof that defendant exercised dominion and control over the marijuana with knowledge of its presence and of its narcotic character and that such possession was for the purpose of sale may be established by circumstantial evidence and any reasonable inferences to be drawn therefrom. (*People* v. *Boddie,* 274 Cal.App.2d 408, 411 [80 Cal.Rptr. 83]; *People* v. *Robbins,* 225 Cal.App.2d 177, 183-184 [37 Cal.Rptr. 244].) Possession need not be exclusive. (*People* v. *White,* 71 Cal.2d 80, 83 [75 Cal.Rptr. 208, 450 P.2d 600]; *People* v. *Boddie,* 274 Cal.App.2d 408, 411 [80 Cal.Rptr. 83]; *People* v. *Yeoman,* 261 Cal.App.2d 338, 347 [67 Cal.Rptr. 869].) ■ Upon arrest two receipts—one for the purchase of a trunk and one for a footlocker—were found on defendant's person; the contraband was found in a trunk and footlocker which he carried to the airport in a car which he had leased, personally removed from the back of the car and tendered for shipment to himself in New York; he also had on his person a key which fit the lock of the footlocker. The foregoing reasonably supports the conclusion that defendant exercised dominion and control over the narcotics found in the trunk and footlocker. While he surrendered actual physical possession of them after he tendered them for shipment, this is not critical in light of the short time during which they were out of his possession, the uncontradicted testimony that Wenk did not open the containers until police arrived and the absence of evidence that either container was disturbed between the time defendant checked them for shipment and the officer opened them. ■ As to knowledge that they contained marijuana, defendant's conduct (*People* v. *Boddie,* 274 Cal.App.2d 408, 411 [80 Cal.Rptr. 83]) points to knowing possession of contraband. Defendant declared the contents of the containers to be sculptures but failed to declare on the weigh bill any value or insurance coverage thereon and named himself as both the shipper here and the receiver in New York. Defendant's conduct raised a reasonable inference

that the marijuana was his and he knew the trunk and footlocker contained the narcotics. ■ The mere possession of a narcotic constitutes substantial evidence that the possessor of the narcotic knew of its nature. (*People* v. *White,* 71 Cal.2d 80, 83 [75 Cal.Rptr. 208, 450 P.2d 600].) ■ The sale purpose of the possession was established by evidence of the quantity of narcotics (76 kilos) and the manner of packaging (individually wrapped bricks) and the opinion of an expert (Sergeant Conner) that the narcotic was packaged for sale. (*People* v. *De La Torre,* 268 Cal.App.2d 122, 126 [73 Cal.Rptr. 704], and cases therein cited.)

■ Appellant's last contention is that a search warrant was necessary and the marijuana was discovered pursuant to an illegal search; and that there was no probable cause for his subsequent arrest and the search of his person. ■ "*People* v. *Marshall,* 69 Cal.2d 51, 57 . . . [69 Cal. Rptr. 585, 442 P.2d 665], makes clear that with certain exceptions, probable cause to believe that 'a search will reveal contraband . . . does not justify a search without a warrant.' Where there is probable .cause, a warrant still must be obtained, absent an emergency, for a search not incident to a valid arrest even though a warrant would not be needed for a search incident to an arrest. (E.g., *People* v. *Harris,* 62 Cal.2d 681, 682-683 [43 Cal.Rptr. 833, 401 P.2d 225].)

■ "The exceptions to the requirement of a search warrant, aside from searches incident to an arrest, are where there is a danger of ' "imminent destruction, removal, or concealment of the property intended to be seized" ' or where the evidence is in plain sight, which 'is, in fact, no search for evidence.' (*People* v. *Marshall, supra,* 69 Cal.2d 51, 56-57, 61.)" (*People* v. *McGrew,* 1 Cal.3d 404, 409 [82 Cal.Rptr. 473, 462 P.2d 1].)

■ Under the circumstances we are of the opinion that an emergency situation existed in which there was no time to obtain a search warrant since the trunk and footlocker were in the process of being removed from the jurisdiction and the officers had reasonable cause to believe defendant too planned an immediate departure. Summoned to the air terminal by Wenk, Officer Feinberg, advised of Wenk's suspicion and shown the containers, detected an odor of marijuana emanating from the cardboard box containing the footlocker. The trunk and footlocker had just been tendered for shipment to R. M. Gordon in New York from R. M. Gordon in Los Angeles. The officer was justified in concluding that once released by Wenk the trunk and footlocker would immediately continue on their way to New York out of the jurisdiction allowing no time in which to procure a search warrant. The fact that the shipment was consigned to the shipper in New York raised a reasonable inference that R. M. Gordon too would

be imminently departing the jurisdiction; that this inference was reasonable is borne out by the airline ticket found on his person upon his arrest.

*People* v. *McGrew,* 1 Cal.3d 404 [82 Cal.Rptr. 473, 462 P.2d 1], relied upon by appellant, has distinguishing factors which preclude direction of the result here. In *McGrew* the trial court made a finding "that there was sufficient time to obtain a warrant" (p. 409); here no such finding was made. In *McGrew* the footlockers had been shipped on a "space available" basis so that the airlines were under no contractual obligation to ship the footlockers before a warrant could be obtained (p. 410); here the containers were tendered for regular shipment and American Airlines was under obligation to immediately ship them, and there is no suggestion in the record that once Wenk released them they would not forthwith be placed aboard an aircraft for flight out of Los Angeles. In *McGrew* the freight agent opened the footlockers and he did so because he was suspicious of defendant's general appearance and the exceptional weight of the footlocker (p. 407); here an officer opened the footlocker, and it is readily apparent that he did so not only because he smelled the odor of marijuana emanating from the cardboard box but because of the emergency involved and the airweigh bill made out by the shipper indicating the trunk and box were being shipped to himself in New York and they contained sculptures yet no value and no insurance coverage thereon had been declared. In the light of these circumstances and the fact that the trunk had been tendered for shipment with the footlocker, the discovery of the 44 kilos of marijuana in the footlocker justified the contemporaneous search of the trunk and seizure of the balance of the contraband.

The foregoing constituted probable cause for the arrest of the shipper who through the Volkswagen and its license and Wenk's description was identified as defendant. (*People* v. *Talley,* 65 Cal.2d 830, 835 [56 Cal.Rptr. 492, 423 P.2d 564].) The search of defendant's person immediately after his arrest disclosing various incriminating articles connecting him with the crime was incident to a lawful arrest and admissible.

The judgment is affirmed.

Wood, P. J., and Thompson, J., concurred.