[No. A030621. First Dist., Div. Three. Nov. 25, 1986.]

THE PEOPLE, Plaintiff and Respondent, v.
KEVIN JOHN ECKSTROM, Defendant and Appellant.

324

COUNSEL

Robert Bratberg, under appointment by the Court of Appeal, for Defendant and Appellant.

John K. Van de Kamp, Attorney General, Martin S. Kaye and Donna B. Chew, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

MERRILL, J.—Appellant Kevin Eckstrom and codefendant Jack Parke Daily, Jr., were charged by information with a felony violation of Health and Safety Code[1] section 11358, marijuana cultivation, and a felony violation of section 11359, possession of marijuana for the purpose of sale. Appellant moved to set aside the information (Pen. Code, § 995) and to suppress evidence (Pen. Code, § 1538.5), both of which motions were denied. Thereafter, Eckstrom entered a plea of not guilty, and following a jury trial was found guilty of possession of marijuana for sale.

Eckstrom was sentenced to two years in state prison. His sentence was suspended, however, and he was placed on probation for five years. The terms of this probation included 120 days in the county jail. This appeal followed.

I

On the "date of the Brink's robbery," Lake County Deputy Sheriff Roger Whitchurch was in an airplane looking for get-away vehicles in the robbery

---

[1]Unless otherwise indicated, all further statutory references are to the Health and Safety Code.

case. While on this flight he observed marijuana plants growing on a hillside. Later, using photographs and records from the Lake County Recorder and Assessor's Office, Deputy Whitchurch determined that a Mr. Daily owned the property on which the marijuana had been observed.

On August 7, 1984, Deputy Sheriff Whitchurch, along with Deputy Sheriff John Kaerth of the Lake County Sheriff's Department, conducted an aerial surveillance of the area. During the flyover, Deputies Whitchurch and Kaerth again observed marijuana growing on the parcel. These observations were made with the naked eye. Deputy Kaerth took photographs. That same afternoon Deputies Whitchurch and Kaerth obtained a map of the area from the assessor's office, and upon checking the deed confirmed Daily to be the owner of the parcel. They then prepared the affidavit and search warrant and presented it to the judge who issued the warrant.

On August 13, 1984, Deputy Whitchurch, accompanied by other deputies and members of the CAMP (Campaign Against Marijuana Planting) unit, executed the search warrant. The officers arrived in several marked trucks and proceeded up a dirt road to a closed gate near the Daily property. On arrival Deputy Kaerth announced that the officers were from the sheriff's department. At this time Deputy Kaerth and another of the officers noticed someone standing in the bushes by the gate. As the deputies approached, the man moved farther into the bushes. The man was stopped and arrested. This man, later identified as appellant, was wearing a "camouflaged type" scarf around his head and carrying binoculars.

Daily's land was located in an isolated rural area. The officers found three marijuana gardens on or near the parcel, one east of the property boundaries, a second at the northern boundary of the property, possibly extending into United States Forest Service land, and a third located entirely on the Daily property. These gardens were connected to each other and to the residence by footpaths. The residence was approximately 150 yards from the nearest garden and 500 yards from the furthest one. The marijuana patches were surrounded by trees and terrain and were not visible from the residence.

One hundred seventy-one plants weighing three hundred pounds were taken from the property. The value was estimated to be a quarter of a million dollars. Deputy Kaerth testified that judging from the appearance of the plants they had been manicured and taken care of on a weekly basis. Pipelines leading to the gardens, and the fullness of the individual plants also led Deputy Kaerth to believe that the marijuana was being cultivated.

Fourteen photographs were taken of the gardens and marijuana plants. Then deputies took ten pounds and five representative samples from the plants. All others were destroyed.

While on the property officers also found a motorcycle concealed in a bush near the southern-most portion of the garden. The tracks made from this motorcycle matched those found on the trails leading from the residence to the gardens. In addition to the plants and the motorcycle, officers also found and seized magazines and books containing information regarding the growing of marijuana, and a notebook containing a schedule for the watering of the plants.

Codefendant Daily's residence was on this parcel. However, at the time of Eckstrom's arrest, Daily was not living in the home. He had been in a motorcycle accident and was hospitalized from July 2, 1984, through August 24, 1984. Appellant Eckstrom's permanent residence at the time of his arrest was in Santa Cruz.

## II

Eckstrom's first contention on appeal is that the trial court committed prejudicial error by denying his motion for mistrial. At trial Deputy Sheriff Whitchurch was cross-examined by counsel for codefendant Daily. During questioning Deputy Whitchurch relayed the following information: "Q. Now, this area we're talking about, are there any unique geographic landmarks of any sort other than what you have already told us about? Mountains, lakes, rivers, huge bouldars [*sic*], anything of that nature?

"A. Well, I don't know how unique you want to get. But there's a wide variety of streambeds and creeks in this area.

"Q. Anything of that nature contained on this parcel number 19?

"A. Not that I used to make any determination other than locating this parcel.

"Q. Were you done?

"A. Well, yes and no. Except that I am familiar with this parcel. I know of this parcel—I knew of this parcel from 1983 as well. Not that I was there, but that I flew over it and observed marijuana on it.

"Mr. Kaplan [counsel for codefendant]: I would like to make a motion out of the presence of the jury.

"The Court: . . .

"The Witness: I apologize to the Court."

Counsel for codefendant Daily made a motion for mistrial. Counsel for appellant joined in the motion. The trial court denied the motion, but did strike the testimony and admonished the jury to disregard that portion of the testimony. Appellant claims on appeal that the deputy's responses substantially prejudiced him and deprived him of a fair trial.

■ It is well settled that a motion for mistrial is addressed to the sound discretion of the trial court. (*People* v. *Childs* (1980) 112 Cal.App.3d 374, 386 [169 Cal.Rptr. 183], citing *People* v. *Romero* (1977) 68 Cal.App.3d 543, 548 [137 Cal.Rptr. 675].) ■ It is not an abuse of discretion when a trial court denies a motion for mistrial after being satisfied that no injustice has resulted or will result from the occurrences of which complaint is made. (*People* v. *Dominguez* (1981) 121 Cal.App.3d 481, 508 [175 Cal.Rptr. 445], citing *People* v. *Romero, supra,* 68 Cal.App.3d at p. 548.) ■ Furthermore, a motion for mistrial based on improper admission of evidence "'presupposes that the effect of the objectionable evidence "is so prejudicial as to be incurable by striking it and admonishing the jury to disregard it."'" (*People* v. *Wojahn* (1984) 150 Cal.App.3d 1024, 1031 [198 Cal.Rptr. 277], citing *People* v. *Guillebeau* (1980) 107 Cal.App.3d 531, 547 [166 Cal.Rptr. 45].)

■ Judged by these standards, the denial of the mistrial motion was proper in the present case. The record shows that appellant's permanent residence was in Santa Cruz. During trial, he never denied that there was in fact marijuana growing on codefendant Daily's property at the time of his arrest in August of 1984. His defense, rather, was that he had no connection to this marijuana.[2] Deputy Whitchurch's testimony regarding the presence of marijuana on the plot in 1983 would have no impact on this defense. Therefore, we find no abuse of discretion when the court below refused to grant appellant's mistrial motion.

## III

■ Appellant also contends that the trial court should have granted his motion for acquittal because the prosecution failed to establish all the necessary elements of the crime charged.

Appellant was charged and found guilty of possession of marijuana for sale. ■ "[T]o establish unlawful possession of narcotics, the evidence

---

[2] Eckstrom testified that he was on the property for the purpose of feeding codefendant Daily's dogs while Daily was being hospitalized.

must show that the accused exercised dominion and control over the drug with knowledge of its presence and narcotic character. [Citations.]" (*People v. Hampton* (1981) 115 Cal.App.3d 515, 522 [171 Cal.Rptr. 312].) "Where the charge is 'possession for sale of marijuana' an additional element must be established, i.e., that the possession by the accused was for the purpose or intent of selling the marijuana. [Citation.]" (*Weber v. Superior Court* (1973) 30 Cal.App.3d 810, 815 [106 Cal.Rptr. 593].) This possession need not be exclusive. (*People v. Gordon* (1970) 10 Cal.App.3d 454, 459 [89 Cal.Rptr. 214].) "[P]ossession may be imputed when the contraband is found in a place which is immediately and exclusively accessible to the accused and subject to his dominion and control, or to the joint dominion and control of the accused and another. [Citation.]" (*People v. Newman* (1971) 5 Cal.3d 48, 52 [95 Cal.Rptr. 12, 484 P.2d 1356].) All elements of the offense may be established by circumstantial evidence and any reasonable inferences drawn from such evidence. (*Ibid.*)

"The test on appeal is whether there is substantial evidence to support the conclusion of the trier of fact. [Citations.] Viewing the evidence in a light most favorable to respondent and presuming in support of the judgment the existence of every fact the trier could possibly deduce from the evidence" (*People v. Gordon, supra,* 10 Cal.App.3d at pp. 458-459, citing *People v. Sweeney* (1960) 55 Cal.2d 27, 33 [9 Cal.Rptr. 793, 357 P.2d 1049]), we conclude that there is substantial evidence to support the judgment. At the time of appellant's arrest on August 7, 1984, codefendant Daily was hospitalized. His hospital stay had begun on July 7, 1984. Deputy Kaerth testified that the plants had the appearance of being cared for on a regular basis and some of the plants had wet patches on the ground surrounding them, indicating that they had been recently watered. Additionally, a notebook was found which contained a schedule for waterings. Based on this and the fact that appellant was the only individual found on this remote parcel of land, it was inferable that he exercised dominion and control over the plants.

 As to knowledge of its presence and character, the mere possession of narcotics constitutes substantial evidence that the possessor of the narcotic knew of its nature. (*People v. Gordon, supra,* 10 Cal.App.3d at p. 460, citing *People v. White* (1969) 71 Cal.2d 80, 83 [75 Cal.Rptr. 208, 450 P.2d 600].) Further, "[k]nowledge of the presence of contraband and of its narcotic content may be inferred from the accused's conduct or statements at or near the time of his arrest. [Citations.]" (*People v. Solo* (1970) 8 Cal.App.3d 201, 206 [86 Cal.Rptr. 829].) In the present case, appellant was found standing in an area surrounded by bushes when the officers first approached. After one of the officers announced their presence, he moved further into the brush. This conduct raised a reasonable inference

that he knew of the presence and character of the marijuana plants located on the property. The sale purpose of the possession was also supported by the evidence. An inference that a controlled substance was possessed for sale rather than for personal use is supported by a showing that large quantities of it were found. (*People* v. *Fitzwater* (1968) 260 Cal.App.2d 478, 490 [67 Cal.Rptr. 190], cert. den. (1968) 393 U.S. 953 [21 L.Ed.2d 364, 89 S.Ct. 378].) Here, the fact that 300 pounds of marijuana were found on the property supports this inference.

## IV

Appellant further contends that the aerial observation upon which the warrant authorizing the search of his property rested, violated his reasonable expectation of privacy protected by the Fourth Amendment and thus was unlawful. We disagree.

This issue was not raised in the trial court at any stage of the proceedings. As a general rule, "'failure of counsel to raise issues at the trial level precludes raising those issues on appeal for the first time. [Citations.]'" (*People* v. *Tolhurst* (1982) 139 Cal.App.3d 1, 7 [188 Cal.Rptr. 474].) Furthermore, "[t]he failure to object to evidence at trial on the same ground urged on appeal precludes raising that issue on appeal. [Citation.]" (*People* v. *Smith* (1986) 180 Cal.App.3d 72, 80 [225 Cal.Rptr. 348].) "One of the reasons courts give for precluding review of a newly advanced objection on appeal is that the prosecution might have been able to offer additional evidence on the question if it had been faced with a proper objection." (*Ibid.,* citing *People* v. *Ibarra* (1963) 60 Cal.2d 460, 462-463 [34 Cal.Rptr. 863, 386 P.2d 487].) "The rationale underlying this rule is particularly compelling when the failure to object occurs, not in a trial on the merits, but in a 1538.5 hearing that is specifically designed to determine all issues relating to the suppression of evidence allegedly obtained by improper police conduct." (*People* v. *Pranke* (1970) 12 Cal.App.3d 935, 941-942 [91 Cal.Rptr. 129].)

Here, the issue of appellant's reasonable expectation of privacy and the resulting unconstitutionality of the overflight was never raised during the proceedings below. Eckstrom's counsel did not include this argument as a basis to challenge the evidence in the motion to suppress. The only ground advanced as a basis for this motion was that the search and later destruction of the plants was a violation of the obligation to preserve material evidence in the case. Therefore, the trial court made no decision on this issue which would allow for further review.

■ Even if we assume that this issue was preserved for appeal, appellant has not demonstrated a reasonable expectation of privacy during the proceedings below.

■ "In determining whether there was a violation of the proscription against unreasonable searches contained in the Fourth Amendment of the United States Constitution, we must decide whether the person has 'exhibited a subjective expectation of privacy' which is objectively reasonable and, if so, whether an unreasonable governmental intrusion has violated that expectation." (*People* v. *Smith, supra,* 180 Cal.App.3d at p. 81; *People* v. *Bradley* (1969) 1 Cal.3d 80, 84-86 [81 Cal.Rptr. 457, 460 P.2d 129]; *People* v. *Edwards* (1969) 71 Cal.2d 1096, 1100 [80 Cal.Rptr. 633, 458 P.2d 713].)

■ The constitutional privilege of protecting one's privacy covers not only the ground, but may extend into the airspace. (*People* v. *St. Amour* (1980) 104 Cal.App.3d 886, 891 [163 Cal.Rptr. 187].) However, "it is well established that the amendment does not protect merely subjective expectation of privacy." (*People* v. *Stanislawski* (1986) 180 Cal.App.3d 748, 753 [225 Cal.Rptr. 770].) The Supreme Court in *Oliver* v. *United States* (1984) 466 U.S. 170 [80 L.Ed.2d 214, 104 S.Ct. 1735], reaffirmed that the special safeguard afforded by the Fourth Amendment is not extended to the open fields. This is so because "[t]here is no societal interest in protecting the privacy of those activities, such as the cultivation of crops, that occur in open fields. Moreover, as a practical matter these lands usually are accessible to the public and the police in ways that a home, an office, or commercial structure would not be. . . . [T]he public and police lawfully may survey lands from the air. For these reasons, the asserted expectation of privacy in open fields is not an expectation that 'society recognizes as reasonable.'" (*Oliver* v. *United States, supra,* 466 U.S. at p. 179, fns. omitted [80 L.Ed.2d at pp. 224-225].)

In *People* v. *St. Amour, supra,* 104 Cal.App.3d at page 891, the appellant raised arguments similar to those of Eckstrom, contending that his Fourth Amendment right to privacy had been violated by the aerial surveillance of his marijuana garden. The court there stated: "The case law makes it clear that a subjective desire to hide the contraband from aerial surveillance is not sufficient to establish the requisite reasonable expectation of privacy. On the contrary, in order to be constitutionally protected from overflights, the person must show that the land in question is expected to be private according to the common habits of persons engaged in agriculture." (*Id.,* at p. 892.)

■ The aerial surveillance at bench falls within the above rule and does not amount to a search in the constitutional sense. The overflights by Deputies Whitchurch and Kaerth took place in a sparsely populated rural area of Lake County. The marijuana gardens grown by appellant and co-defendant Daily were spotted in open fields and were clearly visible with the naked eye to the officers. Under these circumstances, appellant could not entertain a reasonable expectation that the marijuana fields would remain free from warrantless inspection by passers-by including government officials.

Appellant makes the further contention that the aerial overflight in this case should be deemed unlawful because it embraced gardens which were located within the curtilage of his residence which is constitutionally protected. This argument is flawed for several reasons.

First, the gardens were not within the curtilage. The area in which the marijuana was growing was not closely adjacent to the residence. The home was located 150 yards from the nearest marijuana garden and 500 yards from the farthest one. Although there was a gate on the road leading up to the parcel, the area in question was not enclosed with any type of fence. A barrier of natural brush separated the gardens from the home, rendering them barely visible from that point. It cannot be said that the activity taking place here, the cultivation of marijuana, was an "intimate activity associated with the 'sanctity of a man's home and the privacies of life' [citation] . . . ." (*Oliver* v. *United States, supra,* 466 U.S. at p. 180 [80 L.Ed.2d at p. 225].) The gardens were in an undeveloped area of the property outside of the curtilage. In view of this, appellant may not assert a reasonable expectation of privacy in this area.

Secondly, even if the area in question were considered part of the curtilage based on *California* v. *Ciraolo* (1986) 476 U.S. 207 [90 L.Ed.2d 210, 106 S.Ct. 1809], appellant could not successfully assert a reasonable expectation of privacy from lawful aerial observations. In *Ciraolo,* police officers, acting on an anonymous tip, observed defendant's property from ground level but were unable to detect any marijuana growing because of two fences surrounding his yard. They then flew over the house at an altitude of 1,000 feet, observed growing marijuana plants and photographed them. A search warrant was obtained on the basis of the photographs and an affidavit describing the anonymous tip and aerial observations. (*Id.,* at p. 209 [90 L.Ed.2d at p. 214].) The court found that defendant's expectation that his garden was protected from such aerial observation was unreasonable. This was because the police observations took place within public navigable airspace in a physically nonintrusive manner and because anyone flying in

this airspace who glanced down could have seen everything that the officers had observed. (*Id.,* at p. 213 [90 L.Ed.2d at p. 217].)

Similarly, here the police observations took place within public navigable airspace in a physically nonintrusive manner. The police officers' aerial surveillance did not violate appellant's Fourth Amendment rights.

V

■ Finally, appellant challenges the trial court's denial of his motion to suppress evidence of the destroyed marijuana. He contends the marijuana was unlawfully destroyed pursuant to section 11479 because the officers did not strictly comply with the provisions of that section.

Section 11479 requires in pertinent part that destruction of a controlled substance shall not take place until: "[¶] (a) At least five random and representative samples have been taken, for evidentiary purposes, from the total amount of suspected controlled substances to be destroyed. These samples shall be in addition to the 10 pounds required above. . . . [¶] (c) Photographs have been taken which reasonably demonstrate the total amount of the suspected controlled substance or container of the suspected hazardous chemical sampled and to be destroyed. . . . [¶] (e) . . . [¶] Subsequent to any destruction of a suspected controlled substance pursuant to this section, an affidavit shall be filed within 30 days in the court which has jurisdiction over any pending criminal proceedings pertaining to that suspected controlled substance . . . ."

Here, five representative samples as well as ten pounds of the marijuana were preserved. The sheriff's department took 14 photographs of the plants prior to any destruction of the crop and filed an affidavit describing the procedures followed after the date of the destruction. As the trial court correctly ruled these procedures constituted compliance with section 11479. The statute requires only that photographs taken prior to destruction reasonably demonstrate the suspected amount of the controlled substance. Contrary to appellant's contention it was not necessary that all 171 plants totaling 300 pounds be depicted in one photograph. In fact, the language of the statute itself refers to "photographs" as opposed to a single photograph. As to the filing of the affidavit, based on the record this was completed after the 30-day period had passed. However, because appellant was not prejudiced by the delay and there was substantial compliance with the statute, the trial court properly denied the suppression motion. (See *People* v. *Superior Court (Calamaras)* (1986) 181 Cal.App.3d 901, 905 [226 Cal.Rptr. 636].)

The judgment is affirmed.

White, P. J., and Scott, J., concurred.

A petition for a rehearing was denied December 16, 1986, and appellant's petition for review by the Supreme Court was denied February 4, 1987.