Filed 6/20/13  P. v. Baccari CA3

NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Placer)

----

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>  v.<br><br>PATRICK GREGORY BACCARI,<br><br>    Defendant and Appellant. | C069981<br><br>(Super. Ct. No. 62098288) |

Defendant Patrick Gregory Baccari was convicted after a jury trial of rape of an unconscious person, sexual penetration of an unconscious person, first degree burglary, and assault with intent to commit rape during the commission of first degree burglary. On appeal, he challenges the sufficiency of the evidence to support his burglary-related convictions and the legality of his first degree burglary conviction.  We dismiss his first degree burglary conviction and otherwise affirm the judgment.

1

FACTS AND PROCEEDINGS

On March 21, 2009, Jane Doe held a party in her home to celebrate Lorraine G.'s birthday. After decorating the house, Doe, Lorraine G., Amy B. and Michelle P. prepared for the party in Doe's upstairs bedroom. During this time, Doe drank one to two mixed drinks, containing beer, vodka and limeade. She also smoked some marijuana and shared an Ecstasy pill with one of the women. The women then made their way downstairs sometime between 8:00 p.m. and 10:00 p.m. to meet the party guests.

Once downstairs, Doe began to socialize and mingle. She had an additional one to two mixed drinks downstairs. The party guests were told they were not allowed upstairs and were instructed to use only the two downstairs bathrooms. The stairway was taped off with caution tape.

Defendant arrived at the party sometime before 11:30 p.m. or midnight and was introduced to Doe and others by a mutual friend, Jason K. Defendant was subsequently seen interacting with Crystal--one of the women Jason K. had introduced him to earlier. Defendant was touching her arms, putting his hands around her, and attempting to kiss her. Crystal appeared intoxicated and uncomfortable, so one of her friends helped her out of her situation by pretending to be her boyfriend. Crystal eventually had to be carried away from the party because she was so intoxicated.

Defendant was seen going upstairs some time before midnight. Lorraine G. told him he was not allowed to be upstairs and defendant said he was attempting to use the bathroom. Lorraine G. told him he had to stay downstairs and to use one of the two bathrooms down there.

Around 1:00 a.m., Doe went back upstairs to smoke some marijuana with friends. After taking one or two hits, she sat down on her bed and immediately felt sick. She went to her adjoining master bathroom and started vomiting. Lorraine G. and Michelle P.

2

cared for Doe as she knelt over the toilet. By the time Amy B. came upstairs to help, Doe had already vomited several times and passed out.

Doe remained on the bathroom floor, first vomiting and then passed out, for over an hour. During that time, several party guests made their way upstairs, despite the rule to the contrary. R.R., who arrived at the party with Jason K., went upstairs and saw Doe lying on the floor next to the toilet in the master bathroom. Jason K. also went upstairs twice and, on both occasions, saw Doe lying on the floor next to the toilet. On both occasions, Jason K. was accompanied by defendant.

Doe's friends removed her pants, underwear and shirt because she had urinated on herself. They put her in her bed, wearing a bra and shirt, and wrapped in blankets. The friends then went back downstairs, leaving Amy B. with Doe in the bedroom where Amy B. intended to stay for the rest of the night. After awhile, however, she went downstairs briefly to say goodnight to guests who were leaving. When she left the room, Doe was asleep in her bed, covered in blankets, and the lights were off.

Not long thereafter, Doe was awakened by defendant ejaculating with his penis inside of her vagina. She was unable to move and fell back to sleep. She was then awakened again by pain in her vagina or anus. Defendant was kneeling by her bed and had his fingers inside her. Doe slid her feet up and down in an effort to escape but defendant continued. When Doe finally managed to call out for Amy B., defendant retreated toward the door.

Amy B. entered the room to find defendant at the threshold. She pulled him from the room and asked him what he was doing there. Defendant said he was using the bathroom. She noticed that his jacket was wet and asked him why. He responded that he was using the bathroom. She told him there was a closer bathroom in the hall that did not require him to enter Doe's bedroom.

Amy B. went over to Doe and found her curled up and shaking. She asked what had happened and found out defendant had touched Doe. Amy B. summoned Lorraine

3

G. who, after discovering what had happened, confronted defendant. Defendant did not act shocked or deny the accusation. The party guests were told to leave. Lorraine G. called the rape hotline and followed the instructions on how to care for Doe. Doe was taken to the hospital the following day and underwent a sexual assault examination.

When Jason K. left with defendant, he asked him "What the hell happened?" Defendant replied, "Nothing happened. It was all bullshit. They were accusing me of some crap." Jason K. later asked defendant if he had raped Doe and defendant said he did not and that it was "bullshit."

Officers had significant difficulty executing a warrant to collect defendant's DNA, including making numerous attempts to locate him at his home, leaving multiple unreturned voicemails, placing a GPS tracking device on his car, and eventually finding him at his mother's residence.

Doe's rectal, labia majora and external genital swabs produced sperm matching defendant's referenced DNA profile. Doe's vaginal swab yielded DNA of a male contributor and defendant could not be excluded as that contributor.

Defendant ran away to Philadelphia during trial, after Doe completed her testimony. The trial proceeded in his absence. The jury found him guilty of rape of an unconscious person (Pen. Code, § 261, subd. (a)(4); unless otherwise stated, all statutory references that follow are to the Penal Code), sexual penetration of an unconscious person (§ 289, subd. (d)), first degree burglary (§ 459), and assault with intent to commit rape during the commission of first degree burglary (§ 220, subd. (b)). He was later arrested and extradited from New York.

The trial court sentenced defendant to life with the possibility of parole for assault with intent to commit rape during the commission of first degree burglary, three years (stayed pursuant to section 654) for rape of an unconscious person, two years (stayed pursuant to section 654) for first degree burglary, and a concurrent three years for sexual penetration of an unconscious person.

4

DISCUSSION

I

*Sufficiency of the Evidence*

Defendant challenges the sufficiency of the evidence to support his burglary-related convictions. Specifically, he argues there was insufficient evidence he intended to commit rape, sodomy, or sexual genital penetration of an unconscious woman when he entered Doe's room.

When the sufficiency of the evidence is challenged on appeal, we review "the whole record in the light most favorable to the judgment below to determine whether it discloses substantial evidence--that is, evidence which is reasonable, credible, and of solid value--such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt." (*People v. Johnson* (1980) 26 Cal.3d 557, 578.) A conviction will be reversed for insufficient evidence only if it "clearly appear[s] that upon no hypothesis whatever is there sufficient substantial evidence to support it." (*People v. Redmond* (1969) 71 Cal.2d 745, 755.) "If the circumstances reasonably justify the trier of fact's findings, reversal of the judgment is not warranted simply because the circumstances might also reasonably be reconciled with a contrary finding." (*People v. Albillar* (2010) 51 Cal.4th 47, 60.)

Defendant's specific intent to commit a crime may be inferred from all of the facts and circumstances disclosed by the evidence. (*People v. Guerra* (2006) 37 Cal.4th 1067, 1130, disapproved on other grounds in *People v. Rundle* (2008) 43 Cal.4th 76, 151.) "Intent is rarely susceptible of direct proof and usually must be inferred from the facts and circumstances surrounding the offense." (*People v. Pre* (2004) 117 Cal.App.4th 413, 420.)

Defendant insists that the inference of felonious intent is "based entirely on the suspicions and conjecture of the prosecutor" and that the "only reasonable conclusion

5

supported by the evidence" is that defendant entered the room intending to use the bathroom. We disagree.

Even if it is possible to infer from the evidence that he entered the room with the intent to use the bathroom, our standard of review requires us to draw inferences most favorable to the judgment in an effort to determine whether the circumstances reasonably justify the trier of fact's findings. (*People v. Boyer* (2006) 38 Cal.4th 412, 479-480; see also *People v. Bean* (1988) 46 Cal.3d 919, 932-933.) Viewing the evidence in the light most favorable to the judgment, and drawing inferences that the jury could have drawn in support of its verdict (see *Boyer,* at pp. 479-480), we find the evidence supports the judgment.

First, there was evidence that defendant was interested in sexual contact with women at the party. Earlier in the evening, he was observed with Crystal, touching her arms, putting his hands around her and attempting to kiss her.

Despite being told that he was not allowed to go upstairs in the house and should use the downstairs bathrooms if needed, defendant went upstairs on at least two more occasions when he was able to see the victim lying on the floor, apparently passed out, by the toilet. Later the victim's friends returned to the party downstairs without the victim.

After the assault, when confronted by Amy B. at the door to the victim's bedroom, defendant claimed that he was only there to use the bathroom. When asked why his jacket was wet, he claimed that happened while he was using the bathroom. When confronted by Lorraine G. concerning a possible sexual assault, defendant neither acted shocked nor denied the accusation.

Based on this evidence, contrary to defendant's assertion, the jury could reasonably infer defendant knew it was likely Doe was passed out in the room when he entered. And the jury could have inferred he intended to commit rape, sodomy, or sexual genital penetration of an unconscious woman when he entered Doe's room by the fact that it is precisely what defendant did after he entered the room. There is no better proof

6

that defendant entered the room with the intent to commit the sex-related felonies than showing that he did in fact commit them after entry. (See, *People v. Abilez* (2007) 41 Cal.4th 472, 508.) If he had intended only to use the bathroom, he could have done so and left.

In sum, we conclude that the evidence is sufficient to support the verdicts as to each of the burglary-related counts.

II

*The Conviction for First Degree Burglary*

Multiple convictions cannot be based on necessarily included offenses. (*People v. Reed* (2006) 38 Cal.4th 1224, 1227.) Defendant contends, and the People concede, that his conviction for first degree burglary must be dismissed as a lesser included offense to the assault with intent to commit rape during the commission of first degree burglary conviction. We agree.

Under section 459: "Every person who enters any house, room . . . with intent to commit . . . any felony is guilty of burglary." And section 460 provides in relevant part: "Every burglary of an inhabited dwelling house . . . is burglary of the first degree."

For assault with intent to commit rape during the commission of first degree burglary, section 220, subdivision (b) provides in relevant part: "Any person who, in the commission of a burglary of the first degree, as defined in subdivision (a) of Section 460, assaults another with intent to commit rape, sodomy, oral copulation, or any violation of Section 264.1, 288, or 289 shall be punished by imprisonment in the state prison for life with the possibility of parole."

"Thus, first degree burglary is a lesser included offense of section 220, subdivision (b)" because "assault with intent to commit rape during the commission of first degree burglary cannot be committed without also committing first degree burglary." (*People v. Dyser* (2012) 202 Cal.App.4th 1015, 1021.)

7

We, therefore, modify the judgment by dismissing count five as a lesser included offense of count six.

DISPOSITION

The judgment is modified to dismiss the first degree burglary conviction (count five). As modified, the judgment is affirmed. The trial court is directed to prepare an amended abstract of judgment and forward a certified copy thereof to the Department of Corrections and Rehabilitation.


     HULL     , J.


We concur:


     BLEASE     , Acting P. J.


     MAURO     , J.