Filed 8/25/23  In re R.E. CA3

NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| In re R.E., a Person Coming Under the Juvenile Court Law. | C097682 |
| THE PEOPLE,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>R.E.,<br><br>Defendant and Appellant. | (Super. Ct. No. JV141705) |

Following a contested jurisdictional hearing, the juvenile court found the minor R.E. committed three criminal offenses, two of which were based on a finding that he drove a stolen minivan while fleeing from police.  That fleeing minivan ultimately crashed into the side of a house, and the only witness saw *three* people flee from the scene of the crash.  More than 30 minutes later, after searching a nearby neighborhood, police found and arrested only *two* people:  R.E., and a second juvenile, J.L.  J.L.'s

1

injuries indicated he had been riding in one of the passenger seats, but no evidence indicated whether the minor or the third person had been driving. In an attempt to get around this evidentiary obstacle, the petitioner argued, and the juvenile court found, that only two people had been in the minivan, making the minor the only possible driver.

R.E. challenges this finding as unsupported by substantial evidence. Accordingly, the minor contends we must reverse the juvenile court's findings that he fled from a peace officer while driving a vehicle with willful or wanton disregard for safety (Veh. Code, § 2800.2) and thereby also withheld or concealed a stolen vehicle (Pen. Code, § 496d). The People contend the juvenile court reasonably inferred the witness was wrong about the number of people she saw.

We conclude no substantial evidence supports the juvenile court's inference that only two people were in the minivan, which means no substantial evidence supports the juvenile court's finding that R.E. committed the two challenged offenses. Accordingly, we will reverse the juvenile court's judgment in part.

BACKGROUND

A. *Pursuit, Crash, and Arrest*

Just before 1:00 a.m., a Sacramento Police Department officer saw a white minivan driving with its lights off. The officer made a U-turn to follow the minivan and then turned on the red and blue lights on top of his police car to signal for the minivan to stop. The minivan accelerated away from the pursuing officer. The pursuing officer turned on his siren and followed the minivan, which ran a red light and attempted a left turn into a residential neighborhood.

The pursuing officer saw a cloud of dust and thought the minivan had completed the turn into the neighborhood. He drove through the neighborhood looking for the minivan and directing other officers by radio where to search. The pursuing officer was too far behind the minivan to see the minivan had not completed the turn, instead it smashed through a fence and crashed into the side of a house.

2

A neighbor who lived across from the crash site heard a loud noise, looked out her children's bedroom window, and saw a lot of dirt and dust in the air. The neighbor then saw three people run across the street and hide behind a car in a nearby driveway. One wore a grey hooded sweatshirt, one wore a black hooded sweatshirt, and the neighbor could not see what the third person wore. The neighbor had a good view of that section of her neighborhood, but it was too dark to tell whether the people were male or female. The neighbor then saw a police car drive past where the people were hiding. Once the police car reached the far end of the street, the three people ran in the other direction, turned a corner, and ran away.

After the pursuing officer left to continue searching for the white minivan, the police received a call indicating a black truck had crashed into a home in the neighborhood. Another officer responded to investigate the scene of the crash and found the crashed vehicle was actually the white minivan. The airbags in the minivan had deployed, and the front passenger seatbelt was still buckled. The investigating officer suggested the seatbelt may have been buckled behind the passenger's back, so that the passenger could sit unrestrained in the seat without triggering the safety alarm that beeps if someone sits in the seat with the seatbelt unbuckled. A reddish stain on the driver's side of the windshield appeared to be blood. The pursuing officer eventually returned to the scene and spoke with the neighbor who had witnessed three people fleeing from the crash.

A California Highway Patrol airplane had also taken off to assist with the pursuit. On the way to the scene, the flight officer in the airplane received updates from the Sacramento Police Department dispatcher about the status of the pursuit, the discovery of the crash, and the people whom the neighbor had seen fleeing the crash. Once the airplane arrived overhead, the flight officer began using an infrared camera to search for fleeing suspects. The infrared camera allowed the flight officer to see at night by

3

detecting different heat signatures from objects in its view, but the camera would not be able to see anyone inside a building or hiding completely under a vehicle.

The flight officer began at the location of the crash, looked around the unfamiliar area, and compared nearby areas to determine where to begin his search. Compared to a nearby park, school, and group of houses, he saw that a large neighborhood adjacent to the neighborhood where the crash occurred "afforded the most places to hide." So, he searched systematically, house by house, through that adjacent neighborhood until, a little after 1:30 a.m., he saw two people hiding behind a boat in a driveway. Becoming suspicious, the flight officer then focused on those two people, tracking them until police arrested them and forgoing any further search for other suspects. When asked if he had done "an exhaustive search of the area for other suspects prior to finding those two," the flight officer stated that he did an exhaustive search of only the adjacent neighborhood.

The flight officer saw the two people come out from behind the boat, take off their shirts, and then get into a car that drove off. Police stopped the car and found four people in the car with R.E. and J.L. in the backseat, shirtless, but with a grey sweatshirt and a black sweatshirt on the floor at their feet. Both juveniles were sweating and had elevated heart rates, and their clothing was covered in mud and debris, consistent with running through a muddy area like the canal between the crash site neighborhood and the adjacent neighborhood. R.E. had no visible injuries. J.L. had a diagonal reddish mark like a rug burn between his neck and right shoulder, consistent with "seatbelt burn" occurring during a vehicle collision.

Police later determined the white minivan had been stolen sometime after 10:00 p.m. the night of the pursuit and crash.

*B.*      *Jurisdictional Hearing*

The Sacramento County District Attorney's Office filed a petition alleging R.E. was within the jurisdiction of the juvenile court because, as relevant here, he: (1) fled from a pursuing peace officer while driving a vehicle with willful or wanton disregard for

4

the safety of persons or property in violation of Vehicle Code section 2800.2; (2) bought, received, concealed, sold, withheld, or aided in concealing, selling and withholding the stolen white minivan in violation of Penal Code section 496d; and (3) resisted, delayed, or obstructed the pursuing officer in violation of Penal Code section 148, subdivision (a)(1).

At the jurisdictional hearing (see Welf. & Inst. Code, § 701), the parties disputed whether R.E. had been driving the minivan. The prosecutor suggested the neighbor "could have seen somebody else, or it could have been a shadow." The juvenile court found beyond a reasonable doubt that R.E. was driving the minivan during the flight from police and the subsequent crash. In reaching its decision, the juvenile court explained that it was partially disregarding the testimony of the neighbor who saw three people fleeing the crash. The court did not address the neighbor's credibility, but instead suggested the flight officer had "testified that he had done an exhaustive search of that area when he became involved, and he saw no one other than these two subjects." Without further elaboration, the court concluded "based on the totality of the evidence" that only two people had been in the minivan. Because the other minor had a seatbelt burn indicating he had been sitting in one of the passenger seats, the court concluded R.E. must have been driving.

Having found R.E. was driving the minivan, the juvenile court then found beyond a reasonable doubt that the minor had: (1) fled from a peace officer while driving with wanton disregard for safety, a felony; (2) withheld, concealed, or sought to aid in concealing the stolen minivan, a felony; and (3) obstructed the pursuing officer by fleeing from the scene of the crash, a misdemeanor.

*C.       Disposition and Appeal*

At the disposition hearing, the juvenile court adjudged R.E. a ward of the court (Welf. & Inst. Code, § 725, subd. (b)) and placed him under the care and custody of his father. The court committed the minor to juvenile hall for 20 days, ordered him to

5

complete 105 days on electronic monitoring, and ordered him to serve 18 days of home supervision, all of which he had already served. R.E. timely appealed from the judgment. (See *In re Tracy Z.* (1987) 195 Cal.App.3d 107, 112 [jurisdictional findings reviewable on appeal from dispositional order].)

DISCUSSION

R.E. challenges the juvenile court's jurisdictional findings that he violated Vehicle Code section 2800.2 and Penal Code section 496d, arguing no substantial evidence supports these findings because petitioner failed to present substantial evidence that the minor was driving the minivan. The People agree both findings depend on the subsidiary finding that the minor was the driver, but contend the juvenile court made a reasonable inference supported by substantial evidence that only two people were in the minivan, which left R.E. as the only possible driver. We agree with the minor.

A.      *Standard of Review*

Substantial evidence review functions the same in a juvenile proceeding determining whether a minor violated a criminal statute as in an adult criminal proceeding. (*In re Roderick P.* (1972) 7 Cal.3d 801, 809.) We "determine whether a reasonable trier of fact could have found that the [petitioner] sustained its burden of proving the [minor committed the offense] beyond a reasonable doubt." (*People v. Redmond* (1969) 71 Cal.2d 745, 755 (*Redmond*).) We "must view the evidence in a light most favorable to respondent and presume in support of the judgment the existence of every fact the trier could reasonably deduce from the evidence." (*Ibid.*) "If the circumstances reasonably justify the [juvenile] court's findings, reversal is not warranted merely because the circumstances might also be reasonably reconciled with a contrary finding." (*Ibid.*) In other words, "[t]he test on appeal is whether there is substantial evidence to support the conclusion of the trier of fact; it is not whether guilt is established beyond a reasonable doubt." (*Ibid.*)

6

But we do take the heavy burden of proof into account in substantial evidence review:  " ' "To justify a criminal conviction, the trier of fact must be reasonably persuaded to a near certainty.  The trier must therefore have reasonably rejected all that undermines confidence." [Citation.]  Accordingly, in determining whether the record is sufficient in this respect the appellate court can give credit only to "substantial" evidence, i.e., evidence that reasonably inspires confidence and is "of solid value." ' " (*Redmond, supra*, 71 Cal.2d at pp. 755-756.)  "Evidence which merely raises a strong suspicion of the defendant's guilt is not sufficient to support a conviction.  Suspicion is not evidence; it merely raises a possibility, and this is not a sufficient basis for an inference of fact." (*Id.* at p. 755; see Evid. Code, § 600, subd. (b) ["An inference is a deduction of fact that may logically and reasonably be drawn from another fact or group of facts found or otherwise established in the action"].)

### B.    Analysis

Given the standard of review, this case turns on whether the juvenile court could reasonably infer that only the two juveniles arrested by police were in the stolen minivan. We may not "venture beyond the evidence presented at trial, and may consider only those inferences that are reasonably supported by the record.  ' "[A] reasonable inference . . . 'may not be based on suspicion alone, or on imagination, speculation, supposition, surmise, conjecture, or guess work.' " ' [Citations.]  It 'must logically flow from other facts established in the action,' and it cannot be 'based entirely on the suspicions of the officers involved in the case and the conjecture of the prosecution.' " (*People v. Ware* (2022) 14 Cal.5th 151, 167-168.)

The People offer four pieces of evidence to support the inference:  (1) the neighbor's perception was limited; (2) the flight officer located only two people; (3) R.E. and J.L. stayed together after the crash; and (4) R.E.'s lack of injuries was consistent with him being the driver.  "Though we discuss each category of evidence in turn, we stress that our conclusion is based on our assessment of the evidence in its entirety." (*People v.*

7

*Ware, supra*, 14 Cal.5th at p. 168.) We conclude none of this evidence constitutes substantial evidence that R.E. was driving the minivan.

### 1. Neighbor's Perception

The neighbor's testimony that three people fled from the minivan crash was undisputed, as the pursuing officer did not realize the minivan had crashed and had driven off looking for it. The neighbor also testified to having a good view of the street from her window, and she described in detail the journey of the three individuals from the crash site to a hiding spot across the street, and then down the street and around the corner in the opposite direction from the pursuing officer. The neighbor's testimony also comported with the rest of the evidence in every substantial respect: The neighbor saw the same cloud of dust or dirt the pursuing officer saw, she saw the pursuing officer drive by shortly after the crash, and she correctly identified the type and color of the clothing on the two individuals whose clothing she was able to observe. The prosecutor repeatedly relied upon the accuracy of the neighbor's testimony. The juvenile court did not offer any basis for doubting the neighbor's perception.

Nevertheless, the People assert that, because the neighbor could not see what the third person was wearing and could not identify whether the people were male or female, the juvenile court could reasonably infer that she imagined or miscounted the third individual. We see no evidence upon which to base such an inference.

The neighbor testified it was dark, but every detail she testified to seeing proved correct, including distinguishing a grey sweatshirt and a black sweatshirt, despite the low lighting. Given the neighbor's proven accuracy and the suddenness of the situation, her inability to discern the clothing worn by the third person or the gender of any of the people does not support an inference that the third person did not exist. If anything, the neighbor's honesty in admitting the limits of her perception cuts against such an inference, suggesting she would not hesitate to admit if she were uncertain about the number of people she saw. For example, at the hearing, the neighbor testified she could

no longer remember the color of the sweatshirts, so the prosecutor had to refresh her recollection with a copy of the statement she made that night. But the prosecutor made no effort to use the statement to impeach the neighbor's perception or memory as to the number of people she saw. Accordingly, we see no basis in the record for inferring that, because the neighbor's perception was slightly limited, the third person she reported seeing did not exist.

We also note the People's suggestion that the juvenile court could have reasonably inferred the third person was not involved with the alleged offenses is likewise unsupported by the evidence. The evidence showed the three people ran from the backyard where the crash occurred at around 1:00 a.m., hid behind a car while a police officer passed by, and then ran off in the opposite direction. Inferring that one of those three people was not involved is more unreasonable than inferring one of the people did not exist.

### 2. Flight Officer Located Only Two People

The trial court's sole basis for disregarding the existence of a third person fleeing from the car crash was its assessment that the flight officer "had done an exhaustive search of that area when he became involved," and found only two people. The juvenile court misstated the flight officer's testimony. In fact, R.E.'s counsel asked the flight officer if he did "an exhaustive search of the area for other suspects prior to finding those two," and the flight officer specified that he did an exhaustive search only of the adjacent neighborhood, not the entire area surrounding the crash site.

The People renew this argument using language that more closely tracks the flight officer's testimony, contending the flight officer "systematically searched the area for suspects," the search lasted "a while," and included a nearby school and park. Though closer, the People also overstate the record.

The flight officer explained his initial procedure for determining where to search, starting at the crash site and searching for somewhere "that afforded the most places to

9

hide." After considering a park, a school, and some houses to the south, he decided that the large adjacent neighborhood afforded the most places to hide. The rest of the flight officer's testimony confirms he systematically searched only the adjacent neighborhood—not the park, school, or houses he considered in his initial review or any other surrounding areas. For instance, the flight officer refused the prosecutor's suggestion that he had covered a certain radius with his search. He also agreed that once he found two suspects, he did not look for any others. Further limiting the scope of his search, he admitted that his search would not have located anyone hiding in a building or under a vehicle.

Based on this evidence it is simply speculation to decide the flight officer's search would have located any third person fleeing from the crash. The flight officer was forthcoming about the limitations of his search and rejected the prosecutor's only attempt to elicit evidence about how comprehensive his search had been. The third person had approximately 30 minutes to flee in a different direction, hide in a shed or under a vehicle, or outrun R.E. and J.L., to a different part of the adjacent neighborhood the flight officer had not yet reached by the time he spotted the first two suspects. It is certainly possible his limited search would have turned up a third person as well, but neither possibility nor suspicion is "a sufficient basis for an inference of fact." (*Redmond, supra*, 71 Cal.2d at p. 755.)

### 3. R.E. and J.L. Fled Together

The People next contend that any "third person would have stayed with them and also acted in unison with them." Without any evidence about the third person or that person's relationship with R.E. and J.L., other than that they were riding in the same vehicle and initially fled in the same direction, this is again pure speculation. This cannot serve as a proper basis for a reasonable inference.

10

### 4. R.E.'s Lack of Injuries

Finally, the People contend R.E.'s "lack of injuries was consistent with him being the driver." Again, this is insufficient to meet the standard required to support a reasonable inference. There must be some basis in evidence for determining whether the minor or the third person drove the minivan because the petitioner cannot meet its burden of proof beyond a reasonable doubt "where proven facts give[] equal support to each of two inconsistent inferences." (*People v. Allen* (1985) 165 Cal.App.3d 616, 626.)

All of the evidence in this case points to R.E. not driving. The driver's side of the windshield had a red spot on it, which the pursuing officer thought looked like blood, while the minor had no visible injuries. The only seat consistent with neither a facial injury nor a seatbelt injury was the front passenger seat, where the seatbelt was buckled when investigators arrived, and the airbag had deployed.

Perhaps the best explanation of the lack of evidence to infer R.E. drove the minivan that night came from the police officer who helped the pursuing officer arrest the minor and J.L. When asked, "If there's three people and one person has chaffing [*sic*] on the right shoulder and two don't have injuries, would you be able to ascertain which of the two was the driver?" the assisting officer responded, "Not at that time, no." We agree with the officer's forthright logic and conclude there is no basis in the evidence for inferring the minor was driving the minivan.

### 5. Conclusion

Because no evidence presented at the jurisdictional hearing reasonably supports the juvenile court's apparent inference that the only eyewitness imagined a third person fleeing the crashed minivan, we conclude the juvenile court's finding is unsupported by substantial evidence. The People concede the juvenile court's ultimate findings — that R.E. violated Vehicle Code section 2800.2 and Penal Code section 496d — depend on the finding that the minor was driving the minivan. Accordingly, we will reverse the juvenile court's judgment with respect to these two offenses.

11

DISPOSITION

The juvenile court's jurisdictional findings that R.E. violated Vehicle Code section 2800.2 and Penal Code section 496d are reversed. The juvenile court's dispositional order is vacated, and the case is remanded for further proceedings.

/s/
BOULWARE EURIE, J.

We concur:

/s/
KRAUSE, Acting P. J.

/s/
MESIWALA, J.

12