Filed 2/20/24  P. v. Jasso CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

### IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

### FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>  Plaintiff and Respondent,<br><br>  v.<br><br>JOSE JASSO,<br><br>  Defendant and Appellant. | F085209<br><br>(Super. Ct. No. LF013452A)<br><br>**OPINION** |

-ooOoo-

APPEAL from a judgment of the Superior Court of Kern County.  Brian M. McNamara, Judge.

Theresa Osterman Stevenson, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Eric L. Christoffersen and Chung Mi Choi, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

Appellant Jose Jasso was tried for crimes arising from two shootings taking place two days apart against two separate victims: Yvonne Mendoza and Jaime Aguilar.[1] He was charged by information with two counts of attempted first degree murder (Pen. Code,[2] §§ 664/187, subd. (a); counts 1 [Mendoza] & 2 [Aguilar]); two counts of shooting at an occupied vehicle (§ 246; counts 3 [Mendoza] & 4 [Aguilar]; two counts of assault with a semiautomatic firearm (§ 245, subd. (b); counts 5 [Mendoza] & 6 [Aguilar]); one count of being a prohibited person in possession of a firearm (§ 29800, subd. (a)(1); count 7); and one count of being a prohibited person in possession of ammunition (§ 30305, subd. (a)(1); count 8). The information further alleged that as to count 1, appellant personally and intentionally discharged a firearm causing great bodily injury (§ 12022.53, subd. (d)); as to counts 1, 3, and 5, appellant inflicted great bodily injury (§ 12022.7); as to counts 1 through 4, appellant personally used a firearm (§ 12022.5, subd. (a)); and as to all counts, appellant had suffered a prior serious felony (§ 1192.7, subd. (c)(7)) and prior strike (§§ 667, subds. (c)-(j); 1170.12, subds. (a)-(e)) for a 2009 conviction.

A jury found appellant guilty of counts 1 and 3 through 8 and not guilty of count 2. The jury found true all enhancements. In a bifurcated court trial on the alleged prior convictions, the court found appellant had suffered a prior strike conviction.

The court sentenced appellant to prison as follows: for count 1, a term of 14 years to life, plus 10 years for the firearm enhancement; and for count 4, the upper term of 14 years, plus four years for the firearm enhancement. The court stayed punishment for

---

[1] The reporter's transcript identifies Aguilar as Jaime Contreras. He testified he also goes by the name Jaime Aguilar. Because most of the record, including the information, and the parties on appeal refer to him as Aguilar, we will do so as well for the sake of clarity.

[2] All further undesignated statutory references are to the Penal Code.

the remainder of the counts and enhancements. Appellant's total prison term was 14 years to life, plus 28 years.

On appeal, appellant contends: (1) the jury's finding that the attempted murder in count 1 was premeditated and deliberated was not supported by sufficient evidence; (2) the jury's finding that the firearm used in the assault in count 5 was semiautomatic was not supported by sufficient evidence; (3) the trial court committed reversible error by instructing the jury with the general assault with a firearm instruction rather than assault with a semiautomatic firearm as to counts 5 and 6; and (4) the trial court committed reversible error by failing to instruct on the lesser included offense of grossly negligent discharge of a firearm as to count 4.

We reduce count 5 to the lesser included offense of assault with a firearm (§ 245, subd. (a)(2)) and remand the matter for the prosecutor to accept the reduction or retry appellant on the greater offense. We affirm the judgment, as modified, in all other respects.

## FACTS

### *June 22, 2021 Incident—Mendoza Shooting (Counts 1, 3 & 5)*

On June 22, 2021, Kern County deputy sheriffs responded to a gas station where Mendoza was in her vehicle with several gunshot wounds. On her body, deputies found a small caliber slug, either a .22 or .32 caliber, which could have come from a rifle or shotgun, but no ballistics were performed. The deputy who reported to the hospital where Mendoza was being treated testified that Mendoza had been injured in several places in her chest and that her injuries appeared consistent with injuries from a shotgun with pellets.

Mendoza testified at trial that she remembered she was shot 15 times but did not remember how; she could only remember driving, being shot, and then waking up in the hospital. To most of the questions posed regarding the details of the shooting, she answered that she did not remember. When asked if she wanted to be testifying, she

3.

answered, "I just want to go home." When asked if she was scared testifying, she responded, "I just want to go home. I want to be past this. I want to move on." She further testified that deputies picked her up from her house to take her to testify.

The deputy who spoke to Mendoza at the hospital testified Mendoza identified "Frog" as the person who shot her and gave appellant's first and last name. She described him as having several facial tattoos including tattoos below his eyes; appellant has a tattoo below his left eye.

A recorded interview Mendoza gave to deputies on June 24, 2021, was admitted and played for the jury. During this interview, Mendoza picked appellant out of a photo lineup and identified him as the shooter by first and last name and said he went by "Frog." She said she had seen appellant at her friend's house, and he asked her for a ride down the street, and she agreed. Appellant propositioned her for sex, and when she said no, he got angry, and started cussing at her. She responded by saying "f[***] your brother." At that point, appellant shot her 15 times with a long gun, which she thought was a dark grey rifle. She was in shock the first time appellant shot her, and she tried to put the car in gear before realizing she still had it in drive. She was shot several more times before pressing the gas and navigating to the gas station where deputies happened to be.

Mendoza testified that as a result of the shooting, her arm was broken in two places, and she could no longer lift her arm due to a severed ligament. She had to have two chest surgeries and had to have her mouth wired shut.

### June 24, 2021 Incident—Aguilar Shooting (Counts 2, 4 & 6)

On June 24, 2021, Aguilar encountered appellant inside a gas station. Appellant wanted Aguilar to move so he could get by him, but Aguilar pointed out that appellant already had enough room to pass him, to which appellant responded that he would wait for Aguilar outside. When Aguilar got outside, appellant was there and told him "a bunch of stuff" and was using profanity. At one point, appellant lifted his shirt to show Aguilar

he had a gun. Aguilar got into his truck, left, and called 911. Appellant followed Aguilar onto the street on foot and shot towards him from about 30 to 40 feet away. Aguilar heard about two shots. Neither he nor his truck were hit by any bullets. The incident was caught on gas station surveillance footage, which was admitted and played for the jury.

Following the shooting, deputies observed approximately seven to eight .22 caliber shell casings in the street near the gas station.

### Appellant's June 24, 2021 Traffic Stop

Later on June 24, 2021, appellant was subjected to a traffic stop during which a deputy located a .22 caliber semiautomatic rifle loaded with several .22 rounds under the passenger seat, which appellant admitted was his. The rifle had a 15 or 18 to 20 round capacity, depending on whether regular or short caliber ammunition was loaded, and weighed about five pounds. It did not shoot shotgun shells or pellets.

### Appellant's Testimony

Appellant testified he had nothing to do with Mendoza being shot. He did not know Mendoza though on cross-examination admitted she described the same firearm he had. He explained he had had the firearm for about a week because he had just gotten shot and did not want to go through that again. He believed Mendoza thought appellant had something to do with her deceased husband, but he knew nothing about it. He does not go by the name "Frog," though he knows deputies refer to him as such.

As to Aguilar, appellant admitted getting into a verbal altercation with him, following him, and using the semiautomatic .22 caliber rifle deputies later seized to fire two "warning shots" in the air around Aguilar's truck. He does not know why he did it; he was just mad and wanted Aguilar away from him. He admitted he originally told police he did not shoot at Aguilar.

## DISCUSSION

### I. Sufficiency of the Evidence

In assessing a claim of insufficiency of the evidence, we review "the whole record in the light most favorable to the judgment below to determine whether it discloses substantial evidence—that is, evidence that is reasonable, credible and of solid value—from which a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt." (*People v. Snow* (2003) 30 Cal.4th 43, 66.)  Reversal on insufficiency of the evidence is unwarranted unless it appears "that upon no hypothesis whatever is there sufficient substantial evidence to support [the conviction]." (*People v. Redmond* (1969) 71 Cal.2d 745, 755.)  "If the circumstances reasonably justify the findings made by the trier of fact, reversal of the judgment is not warranted simply because the circumstances might also reasonably be reconciled with a contrary finding." (*People v. Jennings* (2010) 50 Cal.4th 616, 639.)

#### A. Premeditation and Deliberation (Count 1)

Appellant contends the evidence was constitutionally insufficient to support the jury's finding that the attempted murder of Mendoza in count 1 was willful, deliberated, and premeditated.  We disagree.

In the context of premeditated and deliberate murder, " ' premeditation means " ' considered beforehand' " [citation] and deliberation means a " 'careful weighing of considerations in forming a course of action …' " [citation].  "The process of premeditation and deliberation does not require any extended period of time." ' " (*People v. Salazar* (2016) 63 Cal.4th 214, 245.)  " 'The true test is not the duration of time as much as it is the extent of the reflection.  Thoughts may follow each other with great rapidity and cold, calculated judgment may be arrived at quickly….' " (*People v. Mayfield* (1997) 14 Cal.4th 668, 767, overruled on other grounds in *People v. Scott* (2015) 61 Cal.4th 363, 390, fn. 2.)  Ultimately, a finding of deliberation and

premeditation requires the existence of "preexisting reflection, of any duration." (*People v. Solomon* (2010) 49 Cal.4th 792, 813.)

Our California Supreme Court outlined three categories of evidence helpful in determining whether evidence is sufficient to support a finding of deliberation and premeditation in *People v. Anderson* (1968) 70 Cal.2d 15 (*Anderson*). They are: (1) facts of activity "directed toward, and explicable as intended to result in, the killing" or *planning* evidence; (2) *motive* to kill evidence; and (3) evidence that the *manner* of killing was "so particular and exacting that the defendant must have intentionally killed according to a 'preconceived design.' " (*Id.* at pp. 26–27.) These factors are meant to be used as a guide in examining the sufficiency of the evidence of deliberation and premeditation, and "[u]nreflective reliance on *Anderson* for a definition of premeditation is inappropriate." (*People v. Thomas* (1992) 2 Cal.4th 489, 517.)

Viewing the evidence in the light most favorable to the judgment, we conclude the jury could have reasonably inferred the attempted murder was willful, deliberated, and premeditated. There was evidence that appellant shot Mendoza 15 times at close range, and because we also conclude there was substantial evidence appellant used a semiautomatic firearm as discussed below, this would have required appellant to pull the trigger 15 separate times. The number of times appellant shot Mendoza supports a finding of some planning to kill, even if appellant made the calculation quickly. It appears appellant was motivated out of frustration or anger at Mendoza for rebuffing his advances or insulting him. Appellant also mentioned during his testimony that Mendoza thought he had something to do with her husband's death, which could have given him further motive to kill. Though appellant testified he learned this from a report and did not know Mendoza, the jury may have discounted this part of his testimony based on Mendoza's testimony she knew appellant as well as her ability to identify him by first and last name.

While we appreciate appellant's position that the evidence supports a finding that appellant acted out of a rash impulse rather than premeditation, the jury could have reasonably concluded that even if appellant initially acted out of a rash impulse by shooting Mendoza the first time, appellant's successive pulls of the trigger indicate some reflection and calculated decision to kill not only out of anger but potentially to avoid detection for wounding her as she was clearly able to identify him.

For these reasons, we conclude the jury's finding is supported by sufficient evidence.[3]

### B. *Semiautomatic Firearm (Count 5)*

Appellant contends the evidence was constitutionally insufficient to support a finding that the firearm he used in the Mendoza shooting was semiautomatic to support his conviction for assault with a semiautomatic firearm in count 5. We disagree.

Our high court has stated: "A semiautomatic firearm 'fires once for each pull on the trigger and reloads automatically, but requires the shooter to release the trigger lever before another shot can be fired.' " (*In re Jorge M.* (2000) 23 Cal.4th 866, 874, fn. 4.)

Again, viewing the evidence in the light most favorable to the judgment, we conclude substantial evidence supported the jury's finding that appellant used a semiautomatic firearm in the Mendoza shooting. Appellant was found with a semiautomatic .22 caliber rifle two days after the shooting, and he admitted he had it on him for the previous week which included the day he shot Mendoza. Mendoza's description of the gun appellant shot her with matched that of the semiautomatic rifle,

---

[3] Appellant briefly argues the evidence was insufficient to support his identity as the shooter. Mendoza's out-of-court statements, which appellant does not assert were erroneously admitted, identifying him as the shooter constitute substantial evidence supporting the jury's finding that appellant was the shooter. Appellant's pointing out that Mendoza described appellant as being shorter and thinner than he was, that Mendoza did not remember the details of the shooting during trial, and that appellant denied shooting Mendoza amounts to no more than reweighing the evidence.

which appellant also admitted. Mendoza testified she was shot 15 times, and the round capacity of the semiautomatic rifle was 16 rounds according to appellant and 15 or 18 to 20 according to one of the deputies. Though one of the deputies testified Mendoza's wounds were consistent with injuries from shotgun pellets, he also testified that it was possible they came from a small caliber rifle. Further, appellant testified he did not own and never carried a shotgun. It can be reasonably inferred the semiautomatic rifle he had on the day of the Aguilar shooting was the same gun he used in the Mendoza shooting.

For these reasons, we conclude a finding appellant used a semiautomatic firearm in count 5 is supported by sufficient evidence.

## II. Instructional Error

### A. Failure to Instruct on Use of a Semiautomatic Firearm in Counts 5 & 6

For the assault charges in counts 5 and 6, the court instructed the jury with CALCRIM No. 875. The jury was instructed:

"The defendant is charged in Counts 5 and 6 with assault with a firearm, in violation of Penal Code section 245(b).

"To prove that the defendant is guilty of this crime, the People must prove that:

"1. The defendant did an act with a firearm that by its nature would directly and probably result in the application of force to a person;

"2. The defendant did that act willfully;

"3. When the defendant acted, he was aware of facts that would lead a reasonable person to realize that his act by its nature would directly and probably result in the application of force to someone;

"AND

"4. When the defendant acted, he had the present ability to apply force with a firearm to a person."

9.

The jury was further instructed: "A firearm is any device designed to be used as a weapon, from which a projectile is discharged or expelled through a barrel by the force of an explosion or other form of combustion."

Thus, instead of inserting the words *semiautomatic firearm* where appropriate, the trial court only used the word *firearm*. In addition, the jury was not instructed with the bracketed definition of semiautomatic firearm as it appears in CALCRIM No. 875: "A *semiautomatic pistol* extracts a fired cartridge and chambers a fresh cartridge with each single pull of the trigger."

Appellant contends the court's failure to instruct on the semiautomatic firearm element of assault with a semiautomatic firearm allowed the jury to convict him of counts 5 and 6 without the prosecution proving every element of the offense beyond a reasonable doubt in violation of his constitutional due process rights. In addition, he contends the jury was not provided with a jury form for the lesser included offense of assault with a firearm precluding them from being able to make a determination on whether he was guilty of the lesser included offense.

Respondent agrees the trial court gave the wrong instruction but asserts any error was harmless beyond a reasonable doubt.

We agree with the parties that the trial court erred and further conclude, as to count 6, the error was harmless; but as to count 5, appellant's conviction must be reduced to the lesser included offense of assault with a firearm.

" 'The trial court has a sua sponte duty to instruct the jury on the essential elements of the charged offense.' [Citation.] Failure to do so is a 'very serious constitutional error because it threatens the right to a jury trial that both the United States and California Constitutions guarantee. [Citation.] All criminal defendants have the right to "a jury determination that the defendant is guilty of every element of the crime with which he is charged, beyond a reasonable doubt." ' " (*People v. Rivera* (2019) 7 Cal.5th 306, 332–333.)

10.

Here, as the parties appear to agree, the court failed to instruct on the element of use of a semiautomatic firearm and therefore erred. (See *People v. Le* (2015) 61 Cal.4th 416, 427 ["the use of a semiautomatic firearm is a necessary element of section 245, subdivision (b)"].) We turn to the more pressing question of whether the error was harmless.

The error of failing to instruct the jury on an element of the offense "is reversible unless 'it is clear beyond a reasonable doubt that a rational jury would have rendered the same verdict absent the error.' " (*People v. Rivera*, *supra*, 7 Cal.5th at pp. 332–333.) In making this determination, a reviewing court does not reweigh the strength of each party's evidence; it does not " 'become in effect a second jury to determine whether the defendant is guilty.' " (*Neder v. United States* (1999) 527 U.S. 1, 19.) Even when the prosecution's case is strong, the error is not harmless if the record contains evidence that could rationally lead to a contrary finding. (*Ibid.*) We do not focus exclusively on the evidence favorable to the verdict, and we do not presume the existence of any facts the jury might reasonably infer in favor of the prosecution. (*People v. Mil* (2012) 53 Cal.4th 400, 418.) "If a thorough review of the record shows there is any evidence that a rational juror could find as a basis for reasonable doubt as to any erroneously omitted element, then the error requires reversal, even when there is 'ample evidence' to support a finding of guilt." (*People v. Madrigal* (2023) 93 Cal.App.5th 219, 243.)

Applying the above principles, we have no trouble concluding that it is clear beyond a reasonable doubt the jury would have convicted appellant of the assault against Aguilar in count 6 absent the error. Appellant admitted to using the semiautomatic firearm found in his possession the day of the Aguilar shooting. We reject appellant's contention the jury may not have accepted the deputy's testimony that the firearm recovered from appellant was semiautomatic. Such a conclusion is not reasonable. The deputy who testified that the firearm recovered was semiautomatic had been a peace officer for 20 years and was a certified firearm instructor, which required, in addition to

11.

the academy, a 32-hour class. During his testimony, the deputy demonstrated the parts of the firearm which caused him to form his opinion it was semiautomatic, including the mechanism which caused the chamber to be loaded with the next round and the part of the gun from which the shell casings were ejected. The deputy's conclusion was not challenged in any way by the defense, and the jury was able to examine the firearm for themselves to confirm the deputy's testimony. In addition, .22 caliber expended shell casings were found in the street where the Aguilar shooting took place. There was no evidence to support reasonable doubt that the firearm was not semiautomatic.

We cannot reach the same conclusion regarding the assault against Mendoza in count 5. As we have explained above in the context of appellant's sufficiency of the evidence claim, while there was sufficient evidence to support the firearm was semiautomatic, the jury was required to make inferences in order to conclude as such. In addition, there was testimony that the wounds could have been made by shotgun pellets, with one of the deputies testifying he knew the difference between shotgun wounds and small caliber rifle wounds and that they appeared to be from a shotgun. In the context of this instructional error, we cannot presume the existence of facts the jury could reasonably infer, and the deputy's testimony may have raised a reasonable doubt in the mind of a juror. Thus, we cannot say the error as to count 5 was harmless.

We reduce appellant's conviction on count 5 to the lesser included offense of assault with a firearm (§ 245, subd. (a)(2)) and remand the matter where the People shall be given the option of "retrying the greater offense, or accepting a reduction to the lesser offense." (*People v. Kelly* (1992) 1 Cal.4th 495, 528; § 1260.)[4]

---

[4]     For the reasons set forth in the body of this opinion by which we concluded there was no evidence to support reasonable doubt that a semiautomatic firearm was used in the Aguilar shooting, we also conclude there is not substantial evidence to support a finding that the lesser offense of assault with a firearm was committed but the greater offense of assault with a semiautomatic firearm was not. (See *People v. Shockley* (2013) 58 Cal.4th 400, 403.) Accordingly, the trial court was not required to instruct on assault

12.

### B. Failure to Instruct on Lesser Included Offense of Grossly Negligent Discharge of a Firearm as to Count 4

Appellant contends the court erred by failing to instruct on the offense of grossly negligent discharge of a firearm (§ 246.3) as a lesser included offense of shooting at an occupied vehicle (§ 246) in count 4. We disagree.

The trial court has a sua sponte duty to "instruct fully on all lesser necessarily included offenses supported by the evidence." (*People v. Breverman* (1998) 19 Cal.4th 142, 148–149, disapproved of on other grounds by *People v. Schuller* (2023) 15 Cal.5th 237, 255–261.) " 'This venerable instructional rule ensures that the jury may consider all supportable crimes necessarily included within the charge itself, thus encouraging the most accurate verdict permitted by the pleadings and the evidence.' [Citation.] '[T]he rule prevents either party, whether by design or inadvertence, from forcing an all-or-nothing choice between conviction of the stated offense on the one hand, or complete acquittal on the other. Hence, the rule encourages a verdict, within the charge chosen by the prosecution, that is neither "harsher [n]or more lenient than the evidence merits." ' " (*People v. Smith* (2013) 57 Cal.4th 232, 239–240.) " ' "The rule's purpose is … to assure, in the interest of justice, the most accurate possible verdict encompassed by the charge and supported by the evidence." ' " (*People v. Landry* (2016) 2 Cal.5th 52, 96.)

An instruction on a lesser included offense is not warranted unless it is supported by "substantial evidence," meaning "evidence from which a reasonable jury could conclude that the defendant committed the lesser, but not the greater, offense." (*People v. Shockley*, *supra*, 58 Cal.4th at p. 403.)

"On appeal, we independently review whether a trial court erroneously failed to instruct on a lesser included offense." (*People v. Trujeque* (2015) 61 Cal.4th 227, 271.)

_____

with a firearm as a lesser included offense as to count 6. Because of this conclusion, as well as our conclusion appellant's conviction in count 5 must be reduced, we need not reach appellant's claim the instructional error deprived the jury of deciding whether he committed the lesser included offense of assault with a firearm.

The "only difference between" the crimes described in section 246 and section 246.3 is that section 246 " 'requires that an inhabited dwelling or other specified object be within the defendant's firing range.' [Citation.] Section 246.3, subdivision (a) is a necessarily included lesser offense of section 246." (*People v. Bell* (2019) 7 Cal.5th 70, 108.)

Our high court has explained: " 'The crime of shooting at an occupied vehicle "is not limited to shooting *directly* at [the] occupied target." [Citation.] Rather, the applicable statute "proscribes shooting *either* directly at *or* in close proximity to an … occupied target under circumstances showing a conscious disregard for the probability that one or more bullets will strike the target or persons in or around it." ' " (*People v. Bell*, *supra*, 7 Cal.5th at p. 109.) Thus, to find appellant guilty of section 246.3, subdivision (a), but not section 246, the jury would have had to find that appellant's shots were not aimed at or " ' "in close proximity to" ' " Aguilar's truck. (See *Bell*, at p. 109.)

Here, the evidence did not support a finding that appellant committed the lesser but not the greater offense. The surveillance footage shows appellant shooting straight in the direction of Aguilar's truck a few moments after Aguilar drove away. Appellant described his act as shooting "warning shots, you know, like, up in the air, like, *around* him." (Italics added.) He shot "*to the right* and then … one in the air." (Italics added.) While appellant denied shooting at Aguilar or his vehicle, he described the shots as being directed "around [Aguilar]." Though appellant avoided directly stating he shot "at" Aguilar's vehicle, his testimony shows he fired at least one shot towards the vehicle. The surveillance footage combined with appellant's testimony demonstrates appellant shot "in close proximity to" Aguilar's truck and leaves no possibility the jury would find appellant guilty of section 246.3 but not section 246 as to count 4.

We find no error with regard to the instructions for count 4.

## DISPOSITION

Appellant's conviction for assault with a semiautomatic firearm against Mendoza in count 5 is reduced to assault with a firearm.  The matter is remanded to give the prosecution the opportunity to determine whether it will retry appellant on count 5.  In all other respects, the judgment is affirmed.


                                        DE SANTOS, J.

WE CONCUR:


POOCHIGIAN, Acting P. J.


SNAUFFER, J.

15.