Filed 3/28/24  P. v. Kerow CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

# COURT OF APPEAL, FOURTH APPELLATE DISTRICT

# DIVISION ONE

# STATE OF CALIFORNIA

|  |  |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>MOHAMED ABDIAZIZ KEROW,<br><br>    Defendant and Appellant. | D081360<br><br><br>(Super. Ct. No. SCD280819) |

APPEAL from a judgment of the Superior Court of San Diego County, Peter L. Gallagher, Judge.  Affirmed and remanded with instructions.

Athena Shudde, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Charles C. Ragland, Assistant Attorney General, Robin Urbanski and Namita Patel, Deputy Attorneys General, for Plaintiff and Respondent.

## MEMORANDUM OPINION

A jury found Mohamed Abdiaziz Kerow guilty of first degree murder of his wife, Mona Salad Kuri.  On appeal, Kerow solely challenges the

sufficiency of the evidence of deliberation and premeditation. We affirm and resolve this case by memorandum opinion, focusing on the factual and procedural background necessary for our analysis only. (Cal. Stds. Jud. Admin., § 8.1; *People v. Garcia* (2002) 97 Cal.App.4th 847, 851-854.)

I.

We review claims of insufficient evidence under the substantial evidence standard. (*People v. Johnson* (1980) 26 Cal.3d 557, 578.) In a criminal case, we review the entire record in the light most favorable to the judgment for substantial evidence that would allow any reasonable trier of fact to find the defendant guilty beyond a reasonable doubt. (*People v. Zamudio* (2008) 43 Cal.4th 327, 357 (*Zamudio*).) To be "substantial," the "evidence must be of ponderable legal significance" (*Estate of Teed* (1952) 112 Cal.App.2d 638, 644), "reasonable, credible, and of solid value" (*Zamudio*, at p. 357). Such evidence can include not only circumstantial evidence, but also all reasonable inferences that can be drawn from such evidence. (*People v. Soriano* (2021) 65 Cal.App.5th 278, 286.) Reversal is only appropriate if "upon no hypothesis whatever is there sufficient substantial evidence to support" the conviction. (*People v. Redmond* (1969) 71 Cal.2d 745, 755.)

"Murder is the unlawful killing of a human being . . . with malice aforethought." (Pen. Code, § 187, subd. (a).) Here, the only theory of first degree murder presented to the jury was that the killing was "willful, deliberate, and premeditated," and willfulness is undisputed. (§ 189, subd. (a).) A killing is premeditated if the defendant "decided to kill before completing the act[s] that caused death." (CALCRIM No. 521.) A killing is deliberate if the defendant "carefully weighed the considerations for and against [his or her] choice and, knowing the consequences, decided to kill." (*Ibid.*) Thus, "[a]n intentional killing is premeditated and deliberate if it

2

occurred as the result of preexisting thought and reflection rather than unconsidered or rash impulse." (*People v. Stitely* (2005) 35 Cal.4th 514, 543.) However, "[t]he true test is not the duration of time as much as it is the extent of the reflection. Thoughts may follow each other with great rapidity and cold, calculated judgment may be arrived at quickly." (*People v. Thomas* (1945) 25 Cal.2d 880, 900.)

In assessing the sufficiency of the evidence of premeditation and deliberation, a reviewing court typically analyzes three categories of evidence: (1) "'planning' activity" prior to the killing, showing the defendant engaged in acts intended to result in the death; (2) "'motive,'" inferred from the defendant and victim's prior relationship; and (3) "the nature of the killing," including whether the manner of killing was "so particular and exacting that the defendant must have intentionally killed according to a 'preconceived design.'" (*People v. Anderson* (1968) 70 Cal.2d 15, 26-27.) Evidence of premeditation and deliberation is likely sufficient if it includes (1) some "evidence of all three types," (2) "extremely strong evidence" of planning, or (3) evidence of motive with evidence of either planning or manner of killing. (*Id.* at p. 27.) These "guidelines are descriptive," are "neither normative nor exhaustive," and "need not [be] accord[ed] . . . any particular weight." (*People v. Halvorsen* (2007) 42 Cal.4th 379, 420.)

II.

Kerow contends that, as a matter of law, the jury's finding of deliberation and premeditation is not supported by substantial evidence, so we should deem Kuri's homicide second degree murder. Having reviewed the entire record with the above principles in mind, we disagree.

While Kerow argues there is "no evidence of any preexisting motive," we conclude otherwise. First, Kuri's brother testified that (1) Kerow would

3

approach him about "issues he was having" with Kuri and (2) those conversations were escalating in intensity and frequency in the time leading up to Kuri's death. Not "too far off from" when Kuri died, Kerow told Kuri's brother "he basically wanted a divorce." Second, a week or two prior to the killing, an "angry" Kerow told one of Kuri's sisters that Kuri had "'violated [*sic*]'" but that the sister "'d[id no]t have to worry about it'" because Kerow was "'going to handle it.'" Third, the day before Kuri died, a friend saw Kuri and said she looked "terrible." While Kuri usually wore "cute clothes," "smil[ed]," and "like[d] to wear makeup," she had a fresh bruise on her face, looked sad, and was dressed and made up uncharacteristically. Fourth, the night of the killing, Kerow twice told a neighbor he thought Kuri was cheating on him in a slightly "aggressive" and "shocked" tone. Collectively, these facts are credible evidence from which a jury could have reasonably found (1) Kerow and Kuri were unhappy in their marriage and (2) Kerow suspected his wife of infidelity prior to the killing. This is quintessential motive. (*People v. Winkler* (2020) 56 Cal.App.5th 1102, 1165 [motive established by evidence marriage was foundering, divorce was impending, and victim was having extramarital affair].) Although Kerow points to evidence that could support other inferences, "choos[ing] between competing inferences" is "within the province of the jury." (*People v. Williams* (2018) 23 Cal.App.5th 396, 408 (*Williams*).)

Kerow initially claimed "there is no evidence . . . of any kind whatsoever" as to planning. However, he admits on reply "the jury reasonably could have reached the . . . conclusion[ ]" that "appellant brought the implements into the bedroom intending to kill his wife or retrieved the implements during the course of an argument." Although he argues the jury also could have found otherwise, we again are bound to follow the inference

4

supporting the judgment:  Kerow intentionally brought one or more of the weapons used in the killing into the bedroom for the purpose of killing Kuri.  (*Williams, supra*, 23 Cal.App.5th at p. 408.)  Kerow further claims "any time for reflection was slight and, therefore, insufficient to ascribe planning to any stage of the incident."  But adequate planning can take place over a short period of time, even during the attack resulting in the death.  (*People v. Pettigrew* (2021) 62 Cal.App.5th 477, 493-494 (*Pettigrew*).)  And, as discussed further below, the manner of this killing—a "multistage and multiple-method attack"—further supports an inference of planning.  (*Id.* at p. 493.)

The jury was presented with additional evidence of planning.  Photographs taken from ATM security video footage and the testimony of a bank fraud investigator establish that early in the morning preceding the killing, Kerow unsuccessfully attempted to withdraw nearly $3,000 from a bank account owned solely by Kuri before ultimately withdrawing $1,000.  He unsuccessfully attempted to withdraw further money both before and after.  Data law enforcement obtained from Facebook showed Kerow fled through Mexico and Nicaragua in the following days, and Kerow was apprehended in Panama about two weeks after Kuri's death.  The reasonable inference that Kerow secured what funds he could in advance to facilitate flight should he carry out his plan to kill Kuri, confirmed by his actual flight, additionally supports a finding that Kerow planned to kill Kuri.  Given this substantial evidence of planning, we need not address the contested issue of whether Kerow's post-killing conduct evinces planning.

Finally, Kerow claims the manner of killing is inconsistent with deliberation and premeditation.  He claims the wounds all over Kuri's body "are the antithesis of a particular and exacting killing."  But nonexecution-style killings can support a finding of premeditation and deliberation,

5

particularly where, as here, evidence of both motive and planning exists. (Cf. *People v. Boatman* (2013) 221 Cal.App.4th 1253.)

Blunt force trauma of the head was the cause of Kuri's death. There was blunt force trauma of her neck, torso, and extremities as well. Kuri had fractures too numerous to count on the top and back of her head and the base of her skull, as well as fractures of both jaws, both nasal bones, and a tooth. There was bleeding around and bruising of her brain. The blunt force trauma caused multiple lacerations, abrasions, and contusions to her head, face, and body. At a minimum, Kuri was struck three times on her head, in addition to the blows to her body. Given the severity of the injuries, it would have been "very difficult" and was "unlikely" a fist inflicted them. The blunt force trauma could have been caused by a seemingly bloodstained wooden board Kerow was videorecorded holding in the hours after the killing. Similar boards were found in the garage of the residence where Kuri was killed, and blood samples taken from the garage matched the DNA of both Kerow and Kuri.

In addition, Kuri had "sharp force injuries." She had cuts on her left arm and a puncture wound on her shoulder caused by a sharp edge with a serrated blade. She had superficial incised wounds to her right hand consistent with warding off a knife attack. A knife blade and its broken handle were found in the bedroom where Kuri was killed. The pieces had both Kerow and Kuri's fingerprints and DNA on them.

This credible evidence supports the reasonable inferences that (1) Kerow first attacked Kuri with the knife, when she was capable of trying to ward off the attack; (2) when the knife broke, rather than stop his assault on Kuri, Kerow made the deliberate decision to go to the garage, grab a board, and continue his attack on Kuri; and (3) Kerow reaffirmed his decision

6

to kill when he struck Kuri at least four times with it.  A defendant's use of multiple weapons and multiple acts to kill is sufficient to find the manner of killing to evidence premeditation, given the defendant's repeated opportunities to stop, and yet persistence in, killing the victim.  (E.g., *People v. Perez* (1992) 2 Cal.4th 1117, 1126-1127.)  Thus, the evidence of the manner of Kuri's killing is substantial evidence from which a jury could have reasonably found Kerow killed Kuri with premeditation and deliberation. (*See Pettigrew*, *supra*, 62 Cal.App.5th at pp. 492-494.)  Once more, the existence of other evidence and inferences favoring Kerow is immaterial given our deferential review.

In sum, the record contains sufficient credible evidence and reasonable inferences drawn from that evidence to enable a reasonable factfinder to conclude beyond a reasonable doubt that Kerow's motive, his planning activity, and the manner in which he killed Kuri evince sufficient deliberation and premeditation to find Kerow guilty of first degree murder.

III.

We affirm. However, we agree with both parties that remand is required for the limited purpose of correcting the abstract of judgment. (*People v. Mitchell* (2001) 26 Cal.4th 181, 185.) We thus remand this matter to the trial court to (1) both correct the minute order from the November 29, 2022 sentencing hearing and prepare an amended abstract of judgment to reflect the 1,351 days of actual custody credit awarded to Kerow at sentencing and (2) forward a certified copy of the amended abstract to the Department of Corrections and Rehabilitation.


CASTILLO, J.

WE CONCUR:


McCONNELL, P. J.


DO, J.

8