Filed 6/12/24  P. v. Holland CA6

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>        Plaintiff and Respondent,<br><br>v.<br><br>EMANUEL HOLLAND,<br><br>        Defendant and Appellant. | H050608<br>(Santa Clara County<br>Super. Ct. No. 101678) |

Defendant Emanuel Holland and another man fatally stabbed a drug dealer during a robbery in 1985.  Defendant was convicted by jury of first degree murder under the felony-murder rule and received an indeterminate sentence.  He petitioned for resentencing under former Penal Code section 1170.95 (renumbered to Pen. Code, § 1172.6 without substantive change).  The trial court denied the petition after an evidentiary hearing.  Defendant argues insufficient evidence supports the trial court's finding that he was a major participant in the robbery who acted with reckless indifference to human life.  He also contends the trial court failed to properly consider his youth at the time of the killing.  For the reasons stated here, we will affirm the order denying resentencing.

## I.    TRIAL COURT PROCEEDINGS

Defendant was charged with one count of first degree murder in 1985.  (Pen. Code, § 187; undesignated statutory references are to the Penal Code.)  A jury convicted defendant of that count, and he was sentenced to an indeterminate term of 25 years to life.

The conviction was affirmed on direct appeal. (*People v. Holland* (Sep. 15, 1987, H001684) [nonpub. opn.].) Defendant petitioned for resentencing under what is now section 1172.6, and that petition was denied at the prima facie stage. A different panel of this court reversed that order and remanded the matter for an evidentiary hearing under section 1172.6, subdivision (d)(3). (*People v. Holland* (Oct. 19, 2021, H048573) [nonpub. opn.].)

## A. THE EVIDENTIARY HEARING

The parties stipulated on remand that three categories of evidence would be the basis for the evidentiary hearing: the statement of facts from this court's 1987 unpublished opinion affirming defendant's conviction on direct appeal; a partially redacted psychological evaluation completed in 2018; and a stipulation in lieu of testimony by defendant's family members.

### 1. Facts From the Direct Appeal Opinion

We take the following summary from the opinion in case No. H001684: "On the evening of May 5, 1985, Derrick Weaver, a cocaine peddler, was robbed and killed on a Palo Alto street. He suffered 17 knife wounds from 2 different knives, 8 of which were relatively superficial and 4 of which were lethal."

"On May 16, 1985, defendant gave a statement to police in Houston, Texas. The tape was admitted into evidence at trial and was played for the jury. The following facts are taken from the transcript of that interview. Defendant and one Anthony Williams observed Derrick Weaver walking along University Avenue when they came out of a nightclub. Believing Weaver had cocaine in his possession, they decided to take it from him. They began following Weaver and eventually approached him. Williams asked Weaver if he had any cocaine, and Weaver permitted him to taste-test the drug. Weaver then returned the cocaine to his pocket. When Williams asked to see the drug again, Weaver replied, ' "man, what you going to do? Rob me or something?" ' Defendant explained: 'I guess he just [got] scared. ... The guy went crazy and slapped [Williams]

2

up in the head with a bottle and took off, like that ... [a]nd, slapped me in the head by my eye then he started running and that's when I, you know, stuck him in back and then after that we was fighting boom boom, and the knife had fell out of my hand.  We was fighting on the ground.  And all of a sudden he hit me again, and that's when I grabbed the knife, you know, and I just cut him.  I didn't know what I was doing and I was drunk at the time.'  Defendant had used his brother's single-edged buck knife which he had taken earlier that day from his sister's car.  Williams eventually joined the fight by striking Weaver and pulling him off defendant.  Williams took the cocaine from Weaver's pocket and, later, divided it with defendant.  Defendant identified a photograph of Anthony Williams during the interview."

"At trial defendant's testimony departed from his earlier statement in certain particulars.  Defendant denied discussing robbing Weaver with the 'other guy' before the confrontation.  After Weaver hit defendant with the bottle, Weaver ran across the street and defendant followed.  Weaver allegedly stopped, turned, and assumed a fighting stance.  Defendant intended to cut, but not to kill, Weaver.  He testified he did not remember the name of the man with him, he lied when he identified Williams, and it was the code of the streets not to divulge the name of a criminal associate."

"According to the examining pathologist, the four lethal wounds appeared to have been inflicted with an instrument with two sharp edges rather than defendant's single-edged buck knife."

### 2.  Psychological Evaluation

A clinical psychologist prepared a psychological evaluation of defendant in 2018. The psychologist did not interview defendant, and "only limited records were provided." The psychologist was retained to analyze the "factors applicable to juvenile offenders as outlined in the *People v. Franklin* and *Miller v. Alabama*" opinions:  age and immaturity; the offender's family and home environment; the circumstances of the offense; impact of familial and peer pressure; the effect of the offender's youth on the criminal justice

3

process; and the possibility of rehabilitation.  Much of the report in our record is redacted.

Defendant was 19 years old at the time of the offense.  The report noted "data from neuroscience research and literature are widespread and unequivocal in demonstrating that younger adults exercise poorer judgement and often fail to anticipate the future consequences of their behavior when compared to their adult counterparts." The report also noted that "a complex trauma reaction can occur as a result of the extensive history of ongoing trauma," and stated children who experience adverse child experiences (e.g., emotional abuse, physical abuse, emotional neglect, etc.) are at risk of "adverse consequences throughout the lifespan, including:  offending, victimization, poor health consequences (e.g., obesity, asthma, heart disease, and early death), and engagement in high-risk behaviors (e.g., drug use or promiscuity)."  No factual information about defendant's childhood is included in the unredacted text.  The report explained that "as the brain and body continue to develop and mature well into the 20s, there is greater capacity to exercise impulse control and to engage in long-term planning."  The report concludes:  "Based on the totality of the information presented, the undersigned respectfully requests that the factors outlined, in accordance with *Miller* and *Franklin*, be considered in determining whether Mr. Holland should be granted parole."

### 3.  Testimony by Defendant's Family

The parties stipulated that "if called to testify, [defendant's] family members would testify that [defendant] experienced substantial physical abuse and community violence resulting in trauma as a minor.  With regard to physical abuse, when [defendant] was a minor, his oldest brother assaulted him with a knife resulting in [defendant's] hospitalization."  (Capitalization omitted.)

### B.  TRIAL COURT DECISION

The trial court denied the resentencing petition by written order.  The court identified the following facts in support of its finding that defendant was a major

4

participant in the robbery: Defendant "admitted he planned the nighttime robbery of a drug dealer with Williams in the recorded statement he made before trial." The court found defendant's pretrial admission "more persuasive than [defendant's] testimony at trial that tried to minimize the plan to take [the dealer's] cocaine." Defendant was present at the scene of the killing and personally used a "single edge buck knife." The court found the drug dealer "perceived their intent to rob him" and "engaged in assaultive conduct" to flee. Defendant "chased the victim across the street and stabbed him in the back." Defendant "fought with the victim and stabbed the victim again." Williams joined the fight by striking the victim, and Williams eventually inflicted the fatal stabs. The trial court found based on the 17 stab wounds inflicted on the victim, "there was time to intervene." There was no evidence defendant took any action to stop Williams or assist the victim. The trial court acknowledged there was also no evidence defendant knew that Williams was armed with a knife or that Williams had any propensity for violence.

The court identified the following facts in support of its finding that defendant acted with reckless indifference to human life: defendant possessed a knife and "personally stabbed the victim when he fled after realizing he was being robbed." Defendant was present at every stage of the crime, "planning, execution, and dividing the stolen cocaine." Defendant had an opportunity to stop the killing and help the victim. He "could have rejected the planned crime or could have adjusted the method to take the victim's welfare into account." There was no evidence defendant did anything to stop Williams or to help the victim. The trial court acknowledged that the duration of the crime was brief and there was no evidence defendant knew that Williams was armed with a knife or that Williams had a propensity for violence.

The court agreed that defendant's young age (19) at the time of the offense was a relevant "factor for consideration for a young adult like [defendant] whose brain [was] still developing because he [was] under the age of 25." The court nonetheless concluded

5

defendant's youth and life experiences did not outweigh the other factors relevant to the major participant and reckless indifference findings.

The trial court found "beyond a reasonable doubt that [defendant] is guilty of felony murder and was a major participant in the underlying felony [robbery] and acted with reckless indifference to human life."

## II.    DISCUSSION

In response to defendant's resentencing petition, the prosecution was required to prove beyond a reasonable doubt that defendant was guilty of murder under current California law.  (§ 1172.6, subd. (d)(3).)  Applying the proper standard, the trial court found that defendant was guilty of murder as a major participant in the robbery who acted with reckless indifference to human life.  (See § 189, subd. (e)(3).)  Defendant argues we should review the trial court's decision de novo because the evidentiary hearing was based on documentary evidence with no live testimony.  But the Supreme Court has confirmed that the denial of a section 1172.6 petition is reviewed for substantial evidence unless there is a question of law about the trial court's understanding of the elements of the applicable offense.  (*People v. Reyes* (2023) 14 Cal.5th 981, 988; accord, *People v. Njoku* (2023) 95 Cal.App.5th 27, 43 [rejecting argument that de novo standard of review applied to order denying § 1172.6 relief where evidentiary hearing limited to documentary evidence].)  Consistent with that authority, we review the trial court's decision for substantial evidence.

"In assessing the sufficiency of the evidence, we review the entire record in the light most favorable to the judgment to determine whether it discloses evidence that is reasonable, credible, and of solid value such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt." (*People v. Bolin* (1998) 18 Cal.4th 297, 331.)  We do not reweigh evidence or second-guess credibility determinations.  (*People v. Ramirez* (2022) 13 Cal.5th 997, 1118 (*Ramirez*).)  We presume the existence of every fact the trier of fact could reasonably deduce from the evidence to support the decision.

6

(*Ibid.*)  To overturn a decision based on insufficient evidence, "it must clearly appear that upon no hypothesis whatever is there sufficient substantial evidence to support it." (*People v. Redmond* (1969) 71 Cal.2d 745, 755.)

## A.  SUBSTANTIAL EVIDENCE SUPPORTS THE MAJOR PARTICIPANT FINDING

The Supreme Court has identified the following factors as relevant to the major participant analysis:  a defendant's role in planning the criminal enterprise leading to the death; a defendant's role in supplying or using lethal weapons; a defendant's awareness of any particular dangers posed by the nature of the crime, weapons used, or past experience or conduct of co-participants; a defendant's presence at the scene and actions (or inaction) that contributed to the death; a defendant's ability to prevent or facilitate the killing; and a defendant's actions after lethal force was used.  (*People v. Banks* (2015) 61 Cal.4th 788, 803.)  No one factor is required, nor is any one necessarily sufficient. (*Ibid.*)

Substantial evidence supports a finding that defendant took an active role in planning the robbery that led to the drug dealer's death.  Defendant described in the recorded police interview that he and Williams saw the dealer leave the nightclub, they believed he had cocaine in his possession, and they decided to take it from him. Defendant speculates that "it appears to have been Williams's plan and appellant went along."  But that is contradicted by defendant's statement to the police that "they"— meaning he and Williams—decided to take the dealer's cocaine.  Defendant characterizes the offense as "an impulsive crime of opportunity" that "was not well thought out." Whatever limited planning occurred individually or collectively, defendant admitted participating in it.

Substantial evidence supports findings that defendant was present during the robbery, personally used a lethal weapon, and contributed to the drug dealer's death.  The trial court correctly acknowledged that the evidence did not support a finding that defendant was the actual killer:  the pathologist's testimony indicated the four lethal

wounds came from a double-edged blade and defendant's knife was single-edged. But a major participant need not have been the actual killer. According to defendant's recorded police interview and trial testimony, the drug dealer asked him and Williams if they were going to rob him, got scared, hit their heads using a bottle, and then fled across the street. Defendant admitted chasing the drug dealer and stabbing him in the back with the knife. Defendant explained that he dropped the knife, picked it up, and stabbed the dealer again. Defendant attempts to minimize his involvement by arguing that he "was being attacked by [the drug dealer]." But the trial court found, consistent with defendant's testimony, that the dealer "perceived their intent to rob him" and "engaged in assaultive conduct" to flee. Rather than allowing the drug dealer to flee, defendant chased and stabbed him multiple times. From defendant's admission that the dealer "started running and that's when I, you know, stuck him in back," the trial court could reasonably infer that the drug dealer was not attempting to fight when defendant stabbed him in the back. The trial court was not required to accept defendant's self-serving testimony that he intended only to cut and not kill the drug dealer.

Substantial evidence supports a finding that defendant had the ability to prevent or facilitate the killing. Defendant admitted chasing the drug dealer across the street and stabbing him multiple times, which facilitated Williams's ability to inflict the lethal stab wounds. He argues "it is not clear how [defendant] could have stopped Williams while [defendant] was attacked by [the drug dealer]," but the dealer attempted to run and had defendant allowed him to flee, the stabbing could have been prevented.

Substantial evidence supports a finding that defendant made no effort to assist the victim after the stabbings occurred. Defendant admitted that he and Williams split the cocaine Williams took from the drug dealer's pocket. No evidence suggested defendant made any attempt to render aid or to otherwise assist the victim. Defendant contends that because the prosecution had the burden of proof, "the lack of evidence does not contribute to the prosecution proving its case." But the evidence showed defendant

continued to participate even after the stabbing by splitting the cocaine with Williams. The trial court could reasonably infer from the lack of any other evidence about defendant's later conduct that he did not attempt to render aid.

The foregoing evidence of four of the five *Banks* factors supports the trial court's conclusion that defendant was a major participant in the robbery that led to the drug dealer's death. As to the remaining *Banks* factor, while we acknowledge there was no evidence defendant was aware Williams was armed or had any propensity toward violence, the absence of that factor does not negate the other factors supporting the trial court's decision.

## B. SUBSTANTIAL EVIDENCE SUPPORTS THE RECKLESS INDIFFERENCE FINDING

Reckless indifference to human life has subjective and objective elements. (*In re Scoggins* (2020) 9 Cal.5th 667, 677 (*Scoggins*).) A defendant must be subjectively " 'aware of and willingly involved in the violent manner in which the particular offense is committed,' and he or she must consciously disregard 'the significant risk of death his or her actions create.' " (*Ibid.*) And the risk of death must be objectively of " ' "such a nature and degree that, considering the nature and purpose of the actor's conduct and the circumstances known to him [or her], its disregard involves a gross deviation from the standard of conduct that a law-abiding person would observe in the actor's situation." ' " (*Ibid.*)

The Supreme Court has identified the following factors as relevant to the reckless indifference analysis: a defendant's knowledge of the presence of a weapon, the number of weapons, and defendant's use of a weapon; a defendant's physical presence at the crime and opportunity to prevent the crime or help the victim; the duration of the felony; a defendant's knowledge of any accomplice's likelihood to kill; and a defendant's efforts to minimize the risk of violence during the felony. (*People v. Clark* (2016) 63 Cal.4th 522, 618–622 (*Clark*).) No one factor is necessary, nor is any one necessarily sufficient. (*Id*. at p. 618.) We agree with courts that have concluded a defendant's youth

9

at the time of the offense can also be a relevant factor when determining whether the defendant acted with reckless indifference to human life. (*In re Moore* (2021) 68 Cal.App.5th 434, 454 (*Moore*); *People v. Jones* (2022) 86 Cal.App.5th 1076, 1093.)

### 1. The *Clark* Factors Support the Reckless Indifference Finding

Defendant argues his possession and use of a knife during the robbery does not demonstrate reckless indifference because his "knife was not the lethal instrument, [he] said he did not want to kill [the victim], and the wounds inflicted by him while being attacked were superficial." But *Clark* observed that while awareness of the presence of a weapon alone may be insufficient, a "defendant's *use* of a firearm, even if the defendant does not kill the victim or the evidence does not establish which armed robber killed the victim, can be significant to the analysis of reckless indifference to human life." (*Clark*, *supra*, 63 Cal.4th at p. 618.) That reasoning applies with equal force to a defendant's personal use of a knife to repeatedly stab a victim. And as we have explained, the trial court was not required to accept defendant's self-serving testimony that he intended only to cut and not kill the drug dealer. Substantial evidence therefore supports a finding that defendant himself possessed one lethal weapon and personally used it during the robbery.

Substantial evidence also supports findings that defendant was present at the robbery; had an opportunity to prevent the crime or help the victim; and made no effort to minimize violence during the robbery. As we noted regarding the similar *Banks* factor, defendant and Williams approached the drug dealer together with the intent to rob him. When the dealer attempted to flee from the attack, defendant had the opportunity to prevent the crime and minimize violence by allowing him to do so. Instead, defendant chased the dealer and stabbed him in the back. There is no indication defendant did anything to help the victim after the stabbing, instead taking the victim's cocaine. Defendant's possession and use of a deadly weapon thoroughly distinguishes this case from *People v. Ramirez* (2021) 71 Cal.App.5th 970, cited by defendant. (See *Ramirez*, at p. 993 ["Ramirez was not armed and had little ability to intervene given the swiftness of

10

the events and his distance from [his accomplice], who stood on the opposite side of [the victim's] vehicle."].)

The foregoing evidence of three of the five *Clark* factors supports the trial court's conclusion that defendant acted with reckless indifference to human life. As to the remaining *Clark* factors, we acknowledge that the duration of the robbery was short and there was no evidence that defendant knew of Williams's propensity for using lethal violence. But here again, the absence of some factors does not negate the evidence of other factors.

Defendant argues the trial court "erred in believing" defendant's mere presence at the robbery was adequate to find he harbored a reckless indifference to human life. Defendant contends the trial court stated "there was no case where the defendant did not act with reckless indifference when he was present at the crime scene." The trial court actually expressed it was unaware of any "felony murder case that has ever held that a defendant who was present for a robbery, *and personally inflicted injury to the victim with a deadly weapon* did not act with reckless indifference to human life." (Italics added.)

### 2. The Trial Court Properly Considered Defendant's Youth

The court agreed with defendant that being 19 years old at the time of the robbery was a relevant "factor for consideration for a young adult like [defendant] whose brain [was] still developing because he [was] under the age of 25." The court acknowledged information in the psychological evaluation about brain development as well as evidence that defendant had experienced physical abuse and community violence as a child. After considering that evidence, the trial court concluded defendant's youth and life experiences did not overcome the other factors relevant to the major participant and reckless indifference findings. The court noted defendant had "personal experience regarding [the] danger of using a knife to assault someone" because he had himself been assaulted by his brother with a knife when he was a minor. It reasoned defendant was

11

"mature enough to understand that chasing a drug dealer across the street at night with a drawn knife, stabbing the victim in the back, fighting the victim and stabbing him again with a buck knife during a robbery (with a co-participant) is knowingly creating a grave risk of death."

The trial court's conclusion that, despite his age, defendant possessed the necessary mental state to demonstrate reckless indifference to human life is supported by substantial evidence. The subjective component of reckless indifference requires a finding that defendant was aware of and willingly involved in the violent manner in which the robbery was committed and consciously disregarded the significant risk of death his actions created. (*Scoggins*, *supra*, 9 Cal.5th at p. 677.) Defendant, armed with a knife, agreed to rob a drug dealer. When the dealer tried to flee, defendant chased him and stabbed him in the back. Defendant continued to stab the dealer before his accomplice delivered lethal stabs. The trial court could reasonably conclude based on the totality of the circumstances that defendant's age did not negate his ability to form the required mental state.

Defendant's remaining arguments would require us to consider certain factors only in isolation or to reweigh the evidence. He argues the crime was impulsive and consistent with a "hallmark of youthfulness." He speculates that because of prior victimization, defendant "still saw himself as vulnerable and relatively helpless." He faults the trial court for interpreting defendant's personal experience as the victim of a knife assault as showing awareness of the danger of using a knife to assault someone, urging instead that he "did not bring [the knife] to attack anyone but to protect himself from being attacked again." Defendant also contends a "teenager with past trauma reacting rashly to being attacked negates any inference he acted with the subjective state necessary to find he acted with reckless indifference." But we do not reweigh evidence. (*Ramirez*, *supra*, 13 Cal.5th at p. 1118.) The same evidence, evaluated as the trial court did, supports its decision.

12

Defendant contends the trial court "misunderstood the law" related to considering youth as a factor because the court determined that defendant's youth did "not have as much weight as it would if he were a juvenile offender [under age 18]." But defendant also acknowledges that "[t]here is some support for this general proposition that youthfulness becomes less significant as a person nears the age of 25 years." The trial court explicitly confirmed its appreciation that youth was "still a factor for consideration for a young adult like [defendant] whose brain [was] still developing because he [was] under the age of 25." Quoting *Moore*, defendant argues that "even if 'evidence supports a finding of reckless indifference for an [older] adult, it is not sufficient to establish' a youth 'had the requisite mental state.' " (*Moore*, *supra*, 68 Cal.App.5th at p. 453.) Neither *Moore* nor any other authority has concluded that a defendant's youth will *always* negate a reckless indifference finding. Defendant's arguments are more properly understood as a disagreement with the weight the trial court assigned to the influence of youth, which does not compel reversal.

Although defendant claims the trial court "asserted there were no cases where evidence of adolescent brain development was relevant for an adult offender in a section 1172.6 petition," we see no such statement or assertion in the court's order. Rather, the court noted that in the cases cited by defendant, the individuals involved were under 18 years old. It then went on to expressly acknowledge the relevance of defendant's age, stating his youth "still has some weight because [defendant] was only 19 years old (with learning disabilities)."

Because we conclude the trial court properly considered defendant's youth in denying the petition, we need not consider whether the federal constitution's due process clause is implicated in section 1172.6 proceedings.

### III.    DISPOSITION

The order denying defendant's Penal Code section 1172.6 resentencing petition is affirmed.

13

_____

Grover, Acting P. J.

**WE CONCUR:**

_____

Lie, J.

_____

Bromberg, J.

**H050608**
*People v. Holland*